EXHIBIT A

Your Missouri Courts

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print GrantedPublicAccess Logoff DKSHARPAT1

## 2046-CC00188 - ROSETTA T HUTTER V WYNDAM VACATION RESORTS INC (E-CASE)

Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution

This information is provided as a service and is not considered an official court record.

Click here to eFile on Case
Click here to Respond to Selected Documents

Sort Date Entries: Descending / Ascending Display Options: All Entries

**08/31/2020** **Corporation Served**

Document ID - 20-SMCC-328; Served To - WYNDAM VACATION RESORTS INC; Server - ST. LOUIS COUNTY SHERIFF'S DEPT.; Served Date - 25-AUG-20; Served Time - 08:30:00; Service Type - Sheriff Department; Reason Description - Served

**Associated Entries: 08/12/2020 - Summons Issued-Circuit**

**Notice of Service**

Notice of Service 20-SMCC-328; Electronic Filing Certificate of Service.-tm

**08/12/2020** **Summons Issued-Circuit**

Document ID: 20-SMCC-328, for WYNDAM VACATION RESORTS INC.

**Associated Entries: 08/31/2020 - Corporation Served**

**08/11/2020** **Filing Info Sheet eFiling**

**Filed By:** JOSEPH M. BACKER

**Pet Filed in Circuit Ct**

Plaintiffs Petition for Declaratory Judgment and for Damages; Exhibit A- Plaintiffs contract with Wyndham; Exhibit B- Judge Harpools Federal Court Order; Exhibit C- AAA Arbitration Letter.-tm

**On Behalf Of:** ROSETTA HUTTER

**Judge Assigned**

Case.net Version 5.14.0.18 Return to Top of Page Released 09/01/2020



# CORPORATE CREATIONS®
Registered Agent • Director • Incorporation

**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

Wyndham Vacation Resorts, Inc.                                    08/26/2020
Ryan Morettini Vice President - Litigation
Wyndham Worldwide Corporation
6277 Sea Harbor Drive
Orlando FL 32821

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s).  **ALL information should be verified by you.**

Item: 2020-1248

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| | | |
|---|---|---|
| 1. | **Entity Served:** | Wyndham Vacation Resorts, Inc. |
| 2. | **Title of Action:** | Rosetta Hunter vs. Wyndham Vacation Resorts, Inc. |
| 3. | **Document(s) Served:** | Summons in Civil Case<br>Petition for Declaratory Judgment and for Damages<br>Exhibits |
| 4. | **Court/Agency:** | Taney County 46th Judicial Circuit Court |
| 5. | **State Served:** | Missouri |
| 6. | **Case Number:** | 2020-CC00188 |
| 7. | **Case Type:** | Fraud |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Tuesday 08/25/2020 |
| 10. | **Date to Client:** | Wednesday 08/26/2020 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 30<br>Thursday 09/24/2020     CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Joseph M. Backer<br>Independence, MO<br>816-283-8500 |
| 13. | **Shipped To Client By:** | Regular Mail and Email with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 261 |
| 16. | **Notes:** | |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective. It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.



*Senite*

# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JEFFREY M MERRELL | **Case Number: 2046-CC00188** |
| Plaintiff/Petitioner:<br>ROSETTA HUTTER | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH M. BACKER<br>14801 E. 42ND STREET SOUTH<br>SUITE 100<br>INDEPENDANCE, MO 64055 |
| vs. | |
| Defendant/Respondent:<br>WYNDAM VACATION RESORTS INC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO 65653 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to: WYNDAM VACATION RESORTS INC**
                             **Alias:**

**110 WILLOW BEND DRIVE**
**BRANSON, MO 65616**

SERVE RA:
COPRORATE CREATIONS NETWORK INC
12747 OLIVE BLVD SUITE 300
ST LOUIS, MO 63141

*COURT SEAL OF*

*CIRCUIT COURT OF MISSOURI*

*TANEY COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| | |
|---|---|
| 08/12/2020 | /s/ Amy Strahan,tm |
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
    Printed Name of Sheriff or Server               Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____      _____
                             Date                           Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $___10.00___ |
| Mileage | $_____ ( _____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

2046-CC00188

# IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI
## AT FORSYTH

| | |
|---|---|
| ROSETTA T. HUTTER,<br>16707 E. 35TH Terrace South<br>Independence, MO 64055 | )<br>)<br>) |

ROSETTA T. HUTTER,                          )
16707 E. 35TH Terrace South                 )
Independence, MO 64055                       )
                                             )
                     Plaintiff,              )
                                             )          Case No:
                                             )
vs.                                          )          Division:
                                             )
WYNDHAM VACATION RESORTS, INC.)
Serve Registered Agent:                      )          DEMAND FOR JURY TRIAL
Corporate Creations Network, Inc.            )
12747 Olive Blvd, Suite 300                  )
St. Louis, MO 63141                          )
                                             )
                     Defendant,              )

## PETITION FOR DECLARATORY JUDGMENT AND FOR DAMAGES

COMES NOW Rosetta T. Hutter (herein after "Plaintiff"), by and through her attorney of record, and for her petition against the above-named Defendant Wyndham Vacation Resorts, Inc., alleges and states as follows:

### The Parties

1.     The Plaintiff, Rosetta T. Hutter is now, and was at all times material hereto a single person residing in Jackson County, Missouri. Plaintiff entered a contract with Defendant, said contract referred to as Contract No.: 00020-1741121. (See Security Agreement and contract documents, attached hereto and incorporated herein as **Exhibit A**).

2.     The Defendant Wyndham Vacation Resorts, Inc. (herein after "Wyndham"), is a Florida corporation in good standing, authorized to do business and doing business in the State of Missouri. Wyndham may be served by serving its Registered Agent listed above.

### Venue and Jurisdiction

3.     This Court has jurisdiction over the parties to this case, as well as the subject

# IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI
## AT FORSYTH

ROSETTA T. HUTTER,                          )
16707 E. 35TH Terrace South                 )
Independence, MO 64055                       )
                                             )
                     Plaintiff,              )
                                             )          Case No:
                                             )
vs.                                          )          Division:
                                             )
WYNDHAM VACATION RESORTS, INC.)
Serve Registered Agent:                      )          DEMAND FOR JURY TRIAL
Corporate Creations Network, Inc.            )
12747 Olive Blvd, Suite 300                  )
St. Louis, MO 63141                          )
                                             )
                     Defendant,              )

## PETITION FOR DECLARATORY JUDGMENT AND FOR DAMAGES

COMES NOW Rosetta T. Hutter (herein after "Plaintiff"), by and through her attorney of record, and for her petition against the above-named Defendant Wyndham Vacation Resorts, Inc., alleges and states as follows:

### The Parties

1.     The Plaintiff, Rosetta T. Hutter is now, and was at all times material hereto a single person residing in Jackson County, Missouri. Plaintiff entered a contract with Defendant, said contract referred to as Contract No.: 00020-1741121. (See Security Agreement and contract documents, attached hereto and incorporated herein as **Exhibit A**).

2.     The Defendant Wyndham Vacation Resorts, Inc. (herein after "Wyndham"), is a Florida corporation in good standing, authorized to do business and doing business in the State of Missouri. Wyndham may be served by serving its Registered Agent listed above.

### Venue and Jurisdiction

3.     This Court has jurisdiction over the parties to this case, as well as the subject

matter of this lawsuit, and venue is properly placed in this Court, as all the acts complained of occurred in Taney County, Missouri.

<p align="center">**General Allegations**</p>

4.     On or about the 11th day of November, 2017, Plaintiff entered into a contract agreement and an installment note with Wyndham. Pursuant to the terms of the contract, the Plaintiff would pay the sum of $14,849.00 as and for 84,000 ownership points in a vacation community.

5.     On or about the 11th day of November 2017, the Plaintiff paid $4,813.11 through PayPal as the down payment and the sum of $10,035.89 under a Retail Installment Contract for a total of $14,849.00 as and for the full payment of the contract agreement and installment note.

6.     At the time of the purchase, Plaintiff was told that she could use her timeshare points to reserve rooms in Wyndham hotel properties, as well as timeshare resorts. Plaintiff advised that she only wanted to use the points at hotels, and would not ever use the points for Wyndham timeshare resorts. Wyndham employees told Plaintiff that was fine. They further stated, to Plaintiff, "using your points for hotels would make your points go farther".

7.     At the time of the purchase, Wyndham gave a Kindle tablet to Plaintiff and told her the documents regarding the purchase were on the tablet. However, the documents cannot be printed or forwarded off the tablet. So, in effect, Wyndham did not provide all the purchase documents to Plaintiff in a usable format.

8.     Plaintiff was told she could roll her vacation points over from year to year for any purpose. Plaintiff was not told about any limitations on the use of the rollover points. Plaintiff specifically inquired about rolling points over for a cruise, and Wyndham employees told her that was definitely an option. However, when she attempted to book the cruise, Wyndham

employees refused to book that cruise.

9. Once Plaintiff had purchased this timeshare and attempted to use the property, she was unable to secure a time when the property was available. This was after she had made repeated attempts to use the timeshare membership at several different locations but was not able to get a reservation at any places she wanted to visit or for any of the dates she selected. At one time, Plaintiff was not receiving return calls from Wyndham and had been told that Plaintiff must request a location one year in advance if she wanted to use the membership.

10. On or about March 4, 2019 Plaintiff filed a civil lawsuit in the Circuit Court of Taney County, Missouri based on this same set of facts. That case was assigned case number 1946-CC00041. (herein after "State Court Action").

11. On or about April 15, 2019 Defendant Wyndham removed the case to the United States District Court for the Western District of Missouri. That case was assigned case number 6:19-cv-03139. (herein after "Federal Court Action")

12. On or about June 17, 2019, the Honorable M. Douglas Harpool (herein after, "Judge Harpool") entered his order dismissing the Federal Court Action, without prejudice, and ordering the parties into arbitration. (See Order Document 15, attached hereto and incorporated herein as **Exhibit B**).

13. Pursuant to Judge Harpool's Order, Plaintiff filed a Demand for Arbitration.

14. As part of its case initiation process, the American Arbitration Association (herein after "AAA") reviewed the Arbitration Clause, drafted by Wyndham. The AAA concluded that the Arbitration Clause did not conform to the AAA's principles.

15. On or about December 18, 2019, the AAA sent written correspondence to Defendant Wyndham advising Wyndham that the Arbitration Clause was out of compliance with

the AAA principles because:

a. The Arbitration Clause purported to compel arbitration in the State of Florida, even though all the transactions and occurrences took place in Missouri. That is a violation of AAA Principle 7: Reasonably Convenient Location.

b. The Arbitration Clause purported to limit damages and purported to prevent Plaintiff from seeking punitive or exemplary damages. That is a violation of AAA Principle 14: Arbitral Remedies. (See AAA Letter to Wyndham, attached hereto and incorporated herein as **Exhibit C**).

16. In its letter to Defendant Wyndham, the AAA advised that it would only administer the Arbitration if Defendant Wyndham waived the illegal terms in the Arbitration Clause.

17. Defendant Wyndham then engaged in a tremendous amount of delay, and ultimately never waived the illegal terms.

18 Defendant Wyndham, by refusing to waive the illegal terms, has failed, and refused to comply with Judge Harpool's Order compelling Arbitration. Therefore, Wyndham has waived the Arbitration Clause.

## COUNT I
## FRAUD

**COMES NOW** the Plaintiff and for Count I of her Petition alleges and states:

19. Plaintiff adopts and incorporates each and every allegation of paragraphs 1-18 above as though set forth in full herein.

20. The actions and omissions of Wyndham concerning the terms and conditions of the Contracts were made with the intent to defraud the Plaintiff.

21. Wyndham made the representations with the intent that the Plaintiff would rely

upon those representations in deciding whether to buy a membership in the timeshare condominium.

22.     The representations made by Wyndham were material to the decision of the Plaintiff to her purchase of the timeshare membership.

23.     The representations made by Wyndham in representing the terms and use of the timeshare property upon the purchase by the Plaintiff were false.

24.     Wyndham failed to use ordinary care in making such representations to the Plaintiff and the Plaintiff relied upon the representations made to her about the availability of the timeshare properties for use by her in making the purchase of the timeshare membership.

25.     Defendant made the representations concerning the terms of the timeshare property to the Plaintiff without knowing whether these representations were true or false.

26.     The Plaintiff relied upon the representations made by Wyndham in making her decision to enter the contract and such reliance was reasonable by the Plaintiff.

27.     As a direct and proximate result of such representations by Wyndham, the Plaintiff sustained general and special damages as alleged in this petition, including but not limited to the cost of the contract, shock, humiliation, embarrassment, stress, fear, worry, emotional upset, distress, inconvenience, and consequential damages.

28.     Wyndham had a pattern and practice of misrepresenting or concealing the true nature of the contracts that their customers were signing.

29.     This conduct of Wyndham was willful, wanton and malicious, done with reckless or conscious disregard for Plaintiff's rights, was outrageous because of evil motive or reckless disregard for Plaintiff's rights and the rights of others, and was done without just cause or excuse and Plaintiff is therefore entitled to an award of punitive damages to punish this Defendant and

to deter this Defendant and others similarly situated from engaging in similar conduct in the future.

 **WHEREFORE**, Plaintiff Rosetta T. Hutter demands judgment for actual damages against, Wyndham Vacations Resorts, Inc. in an amount in excess of $25,000 that is fair and reasonable, for the costs of this action, for judgment for punitive damages against Wyndham Vacations Resorts, Inc. and for such other and further relief that the Court deems just and equitable in the premises.

<p style="text-align:center;"><u>**COUNT II:**</u><br><u>**VIOLATIONS OF THE MERCHANDISING PRACTICES ACT, RSMo SEC 407.020**</u></p>

 **COMES NOW** the Plaintiff and for Count II of her Petition alleges and states:

 30. Plaintiff adopts and incorporates each and every allegation of paragraphs 1-29 above as though set forth in full herein.

 31. Wyndham's conduct made during the course of their business, before, during, and after the sale as alleged, constituted violations of RSMo § 407.020 and the Attorney General Regulation 15 C S R. 60-7.010 through 15 C.S.R. 60-9-110, having the force of the law, particularly including but not limited to:

 (a) The Plaintiff requesting use of the timeshare repeatedly and being told that it was not available;

 (b) The Defendant telling Plaintiff that she would use her timeshare points for hotels, when in fact, that was not a permitted use of Plaintiff's timeshare points;

 (c) Giving Plaintiff a Kindle that has the purchase documents loaded on it, but such documents cannot be downloaded or forwarded or printed;

 (d) The misrepresentations listed in this petition in paragraphs 1-30 above;

 (e) Drafting an Arbitration Clause that does not comply with the rules of the

American Arbitration Association;

(f)     Including a choice of venue clause in the Arbitration Clause that violates AAA's Principle 7: Reasonably Convenient Location;

(g)     Including a limitation of damages clause in the Arbitration Clause that violates AAA's Principle 14: Arbitral Remedies;

(h)     By refusing to waive the illegal terms in the Arbitration Agreement and proceed to arbitration as ordered by Judge Harpool.

32.     As a proximate result of the breaches of § 407.020, Plaintiff has suffered general and special damages as alleged in this petition, including but not limited to, the cost of the contract, shock, humiliation, embarrassment, stress, fear, worry, emotional upset, distress, inconvenience, and consequential damages.

33.     This conduct of Wyndham was willful, wanton, and malicious, done with reckless or conscious disregard for Plaintiff's rights, was outrageous because of evil motive or reckless disregard for Plaintiff's rights and the rights of others and was done without just cause or excuse and Plaintiff is therefore entitled to an award of punitive damages to punish this Defendant and to deter these Defendants and others similarly situated from engaging in similar conduct in the future.

34.     Pursuant to § 407.025, Plaintiff is entitled to recover her actual damages, punitive damages, and attorney fees for Wyndham's violation of § 407.020.

**WHEREFORE**, Plaintiff Rosetta T. Hutter demands judgment in her favor for actual damages against Wyndham Vacation Resorts, Inc. in an amount in excess of $25,000 that is fair and reasonable, for the costs of this action, for reasonable attorney's fees, for judgment for punitive damages against Wyndham Vacations Resorts, Inc., and for such other and further relief

that the Court deems just and equitable in the premises.

## COUNT III
## NEGLIGENT MISREPRESENTATION

**COMES NOW** the Plaintiff and for Count III of her Petition alleges and states:

35.     Plaintiff adopts and incorporates by this reference all allegations made in paragraph 1-34 above as though set forth in full herein.

36.     The conduct, omissions, concealment, and actions of Wyndham constitute negligent misrepresentation.

37.     Wyndham made the representations with the intent that the Plaintiff would rely upon those representations in deciding whether to buy a membership in the timeshare property.

38.     The representations were material to the purchase of the timeshare property membership.

39.     The representations were false.

40.     Wyndham failed to use ordinary care in making such representations, and such representations were made by Wyndham without knowledge as to whether they were true or not.

41.     The Plaintiff relied upon the representations in making her decision to enter the contract and such reliance was reasonable.

42.     As a direct and proximate result of such representations, the Plaintiff sustained general and special damages.

43.     Wyndham had a pattern and practice of misrepresenting or concealing the true nature of the contracts that their customers were signing.

44.     Plaintiff suffered general and special damages proximately caused by this fraudulent conduct of Wyndham as alleged in this petition, including but not limited to the cost of the contract, loss of investment, shock, humiliation, embarrassment, stress, fear, worry,

emotional upset, distress, inconvenience, and consequential damages.

45.    This conduct of Wyndham was willful, wanton, and malicious, done with reckless or conscious disregard for Plaintiff's rights, was outrageous because of evil motive or reckless disregard for Plaintiff's rights and the rights of others, and was done without just cause or excuse and Plaintiff is therefore entitled to an award of punitive damages to punish this Defendant and to deter this Defendant and others similarly situated from engaging in similar conduct in the future.

**WHEREFORE**, Plaintiff Rosetta T. Hutter demands judgment in her favor for actual damages against Wyndham Vacations Resorts, Inc. in an amount in excess of $25,000 that is fair and reasonable, for the costs of this action, for judgment for punitive damages against Wyndham Vacation Resorts, Inc. and for such other and further relief that the Court deems just and equitable in the premises.

## COUNT IV
## GENERAL NEGLIGENCE

**COMES NOW** the Plaintiff and for Count IV of her Petition alleges and states:

46.    Plaintiff adopts and incorporates by reference each and every allegation of paragraphs 1-45 above as though set forth in full herein.

47.    Defendant had a duty to act as an ordinarily careful and prudent person would act.

48.    Defendant breached this duty when it represented to Plaintiff that the purchase of the timeshare would provide her with the ability to get a reservation on any of the places she wanted to visit. Defendant also represented to the Plaintiff that if she paid additional money and upgraded her timeshare membership that she would be able to get a reservation on her preferred week even if it were not available. These representations were not true. Defendant also represented to Plaintiff that she could convert her vacation points to reward points. Such a

conversion devalues the points significantly.

49.    Defendant's breach of duty caused or contributed to cause damage to Plaintiff in the form of the cost of the contract, loss of investment, shock, humiliation, embarrassment, stress, fear, worry, emotional upset and distress.

50.    Plaintiff is entitled to an award of punitive damages because Defendant acted willfully, wantonly, with malice, or with a conscious disregard for the rights of Plaintiff and others.

**WHEREFORE**, Plaintiff Rosetta T. Hutter demands judgment for general negligence against Wyndham Vacation Resorts, Inc. in an amount in excess of $25,000 that is fair and reasonable, for the costs of this action, and for such other and further relief that the Court deems just and equitable in the premises.

## COUNT V – DECLARATORY JUDGMENT

**COMES NOW** the Plaintiff and for Count V of her Petition alleges and states:

51.    Plaintiff adopts and incorporates each and every allegation of paragraphs 1-50 above as though set forth in full herein.

52.    Plaintiff seeks a Declaratory Judgment of this honorable court that Defendant Wyndham has waived its right to Arbitration by drafting an illegal Arbitration Clause and by refusing to waive the illegal terms.

53.    Plaintiff seeks a Declaratory Judgment of this honorable court that Defendant Wyndham's Arbitration Clause violates principle 7 and principle 14 of the AAA.

54.    Plaintiff seeks a Declaratory Judgment that Defendant Wyndham has failed to comply with Judge Harpool's Order Compelling Arbitration.

55.    Plaintiff seeks a Declaratory Judgment that Defendant be ordered to appear in this

action and proceed with litigation, and not arbitration.

56.     Plaintiff seeks a Declaratory Judgment that Defendant be barred from filing a Motion to Compel Arbitration in this matter.

**WHEREFORE**, Plaintiff Rosetta Hutter seeks a Declaratory Judgment, of this honorable court, that Defendant Wyndham Vacations Resorts, Inc. has waived its right to Arbitration by drafting an illegal Arbitration Clause and by refusing to waive the illegal terms; that Defendant Wyndham Vacations Resorts, Inc. has failed to comply with Judge Harpool's Order Compelling Arbitration; that Defendant Wyndham Vacations Resorts, Inc. be ordered to appear in this action and proceed with litigation, and not arbitration; that Defendant Wyndham Vacations Resorts, Inc. be barred from filing a Motion to Compel Arbitration in this matter, and for such other and further relief as the court deems just and equitable in the premises.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted by:

**THE BACKER LAW FIRM, LLC**

By:     */s/ Joseph M. Backer*
        JOSEPH M. BACKER, MO#37550
        14801 E. 42nd Street S., Suite 100
        Independence, Mo 64055
        Telephone: (816) 283-8500
        Facsimile: (816) 283-8501
        jbacker@backerlaw.net
        ATTORNEYS FOR PLAINTIFF



# SECURITY AGREEMENT

Member Number    00203423356
Contract Number   00020-1741121
Contract Date       11-11-2017

## CLUBWYNDHAM® ACCESS VACATION OWNERSHIP PLAN
### RETAIL INSTALLMENT CONTRACT
### PURCHASE AND SECURITY AGREEMENT
### (Missouri)

Wyndham Vacation Resorts, Inc., a Delaware corporation (*"Seller"*), agrees to sell to **ROSETTA A HUTTER SINGLE WOMAN** (*"Owner"*) a membership interest (*"Ownership"*) in PTVO Owners Association, Inc., a non-stock, non-profit Delaware corporation (*"Association"*), which Ownership includes the right to participate in the ClubWyndham Access Vacation Ownership Plan (*"Club"*) and the right to use and occupy Club Accommodations. Seller and Owner may hereinafter be referred to collectively as the *"Parties"* or individually as a *"Party"*. If more than one person executes this Agreement as Owner, the liability of each Owner under this Agreement shall be joint and several. These rights are denominated in Points and Owner agrees to purchase the Ownership for a purchase price of **$14,500.00** (the *"Purchase Price"*) on the following terms and conditions:

Points consisting of the following:

Perpetual Points:    __84,000__    Annual __X__    Biennial ____

*"Initial Use Year"*: **April 1st through March 31st.**

## A. BENEFITS AND NATURE OF OWNERSHIP

**1. Ownership.** Owner is a member of the Association, and is entitled: (a) to use Points to reserve the use of accommodations in the Club (*"Club Accommodations"*), (b) to vote for directors of the Association, (c) to vote on major decisions of the Association, and (d) through the Club and the Association, to participate in the ownership of the assets of the Association. At the Closing of the purchase of the Ownership as set forth in Section 37 below, (i) Owner will receive an Ownership Certificate evidencing the Ownership (which will delineate, among other things, Owner's Points), and (ii) Owner's name and the other information concerning the Ownership will be entered into the permanent records of the Association (*"Club Ownership Register"*). The Seller is Wyndham Vacation Resorts, Inc., 6277 Sea Harbor Dr. Orlando, FL 32821. Owner is purchasing a timeshare use timeshare interest in a multi-site timeshare plan called ClubWyndham Access Vacation Ownership Plan. The address of this timeshare plan is 6277 Sea Harbor Dr., Orlando, FL 32821. Refer to the ClubWyndham Access Public Offering Statement (*"Public Offering Statement"*) accompanying this Agreement for a list of Club Accommodations which are under construction (if any) and estimated completion dates.

**2. Duration of Ownership.** Ownership shall be effective from the date on which the Closing described in Section 37 below occurs; Owner may use Points to obtain reservations and other Club benefits starting with Owner's Initial Use Year as set forth above. Ownership shall be perpetual.

**3. Transferability of Ownership.** Subject to the terms and provisions of the Declaration of Covenants, Conditions and Restrictions and Grant and Reservation of Easements for ClubWyndham Access Vacation Ownership Plan (*"Declaration"*), the Ownership (and the Points) may be transferred entirely or partially at any time during their term and without limitation to the number of transfers, through sale, gift, inheritance, dissolution of marriage, or by any operation of law, subject to the following terms: (a) a reasonable Ownership transfer fee has been paid to the Association; (b) all payments or charges due the Association, Seller or any Holder or Co-Holder (as those terms are defined in Section 16) of this Agreement are current; (c) the Points transferred and the Points retained, if any, must each be enough Points to satisfy the then Minimum Points Requirement as established by Seller; (d) the Association must consent to the transfer which consent shall not be unreasonably withheld, conditioned or delayed; (e) the transfer must be entered in the Club Ownership Register; (f) all aspects of the transfer must comply with applicable law; and (g) if any financed amounts are still owing to Seller or to any Holder or Co-Holder, (i) the Owner must obtain the written consent of the Seller or any Holder or Co-Holder to such proposed transfer which consent shall not be unreasonably withheld, conditioned or delayed, (ii) the transferee must satisfy the then current credit requirements of the Seller or any Holder or Co-Holder, and (iii) the transferee may be charged a reasonable financing transfer fee. Owner and Owner each acknowledge and agree that Seller has entered into this Agreement in consideration and reliance upon the creditworthiness and reliability of Owner.

## B. ACCOMMODATIONS AND OTHER MATTERS

**4. Club Accommodations.** Owner shall have access to all existing and future Club Accommodations and the properties within which those Club Accommodations are located (*"Club Properties"*), as well as all other accommodations owned or operated by or associated with Club, wherever located. Provided however the location and specific nature of the Club Accommodations shall be subject to change in accordance with the Club Instruments (as defined below).

**5. Participation of Owner in Association Governance.** The Articles of Incorporation, By-laws, and Regulations of the Association and the Declaration provide, among other things, for: (a) meetings of, and votes by the Parties who hold Ownership in the Association (called *"Owners"*) (b) election of directors, and (c) use rights in Club Accommodations.

**6. Control of Club Accommodations by the Association.** The Association or one or more Trusts each of whose beneficiary is the Association, shall hold the deed or the lease to each Club Accommodation, free of the effects of debt encumbrances (or with a non-disturbance agreement in place), and subject to the Declaration which, among other things: (a) is recorded or filed against each Club Accommodation; (b) provides for dedication of the Club Accommodation to the Club; and (c) establishes the Points as the currency of use in the Club. Notwithstanding the Association's or a Trust's ownership of Club Accommodations in the various Club Properties, in many instances, not all of the accommodations at a Club Property will be or become Club Accommodations and therefore, the Association will have limited, if any, right to control that Club Property.

**7. Power of Attorney.** The power to direct the Trustee as to all matters shall be exercised solely by the Association and by the Seller acting in accordance with the Club Instruments. The Association and the Seller may exercise that power of direction without the consent of the Owner. To the extent that the joinder of the Owner may be required to validate any act or thing done by the Association or the Seller pursuant to this power of direction, each Owner, by entry in the Club Ownership Register, grants to the Association and to the Seller a special power of attorney for these purposes, to the extent permitted by applicable law, coupled with an interest that cannot be revoked as set forth in Section 7.5 of the Declaration.

**8. The Club.** The Club is governed by, among other things, the Declaration; the Articles of Incorporation and By-laws for the Association; Trust Agreements, if any; and the regulations, as each may be lawfully amended or supplemented from time to time (all such governing documents, as so amended, *"Club Instruments"*). In addition, because many Club Accommodations may be located within Club Properties that are themselves operated as condominiums or timeshare programs, those Club Accommodations are subject to declarations, articles of incorporation and by-laws for the association managing such property and the rules and regulations of the condominium and/or timeshare programs being operated thereon (*"Club Property Instruments"*). The Club Instruments, together with the Club Property Instruments, will govern many aspects of ownership, use and operation of the Club and the Club Accommodations, including, without limitation, (a) reservations; (b) the number of persons permitted to occupy each Club Accommodation; (c) guest policies; (d) fees; (e) rental of Club Accommodations by Owners and by the Club and others; (f) charges for use of specific facilities at each Club Property; (g) personal conduct and behavior; (h) check-in and check-out times; and (i) care and maintenance of Club Accommodations and related facilities and amenities. The Ownership conveyed by this Agreement shall be held by Owner subject to each of the provisions of the Club Instruments and the Club Property Instrument.

**9. Development and Management of Club.** Seller has developed the Club and has caused accommodations in Club Properties to be transferred to the Association or a Trust for the benefit of the Association in exchange for the proceeds of sale as well as exclusive marketing rights, and the right to add additional properties. Pursuant to a Management Agreement between Seller and/or one or more affiliates of Seller, and the Association, Seller or such affiliate will also manage the Club, the Association and those Club Properties which are not part of other timeshare or condominium programs.

## C. POINTS USE

**10. Club Program.** The benefits and obligations of Ownership are determined by the number and types of Points assigned to the Ownership.

(a) <u>Use.</u> Points may be used to reserve Club Accommodations that are available through the Club on a space available basis. The number of Points required for occupancy of any Club Accommodation will be based on numerous factors, including, without limitation, the season, location, unit size and type, and day of the week.

(b) <u>Issuance.</u> Points are renewed annually (or, in the case of Biennial Points, every other year) throughout the term of the Ownership, at the beginning of Owner's Use Year, in the total number of Points purchased by Owner.

(c) <u>Additional Points.</u> Owner may purchase additional Points from Seller at any time after the date of this Agreement, subject to the following: (i) the Points are available; (ii) Owner is not in default under this Agreement; (iii) the Owner is in good standing with the Association; (iv) the then current price is paid; and (v) if Seller finances the purchase, Owner satisfies Seller's then current credit requirements.

## D. QUALIFICATIONS AND CONDITIONS TO PURCHASE ASSOCIATION MEMBERSHIP

**11. Legal Capacity.** Owner represents that Owner is a person or entity with the legal capacity to enter into this Agreement.

**12. Non-Investment Purchase.** Owner represents that Owner is purchasing an Ownership for the purpose of recreational and social use, and not for financial profit.

## E. CONTRACTUAL STANDARDS

**13. Liability Limitations.** Owner agrees that Owner and Owner's family or guests assume all risks of loss or damage to persons or property in using the Club Accommodations and the Club Properties in which they are located, except that this limitation of liability shall not apply in cases of negligence of the Seller, Manager or Association. Owner also agrees to maintain liability and property damage insurance in connection with any motor vehicle(s) brought to the Club Accommodations, in amounts customarily carried on such vehicle(s).

**14. Owner Default.** Owner shall be in default under this Agreement if Owner fails to pay on time, keep any promise, or fulfill any agreement or obligation contained herein or in any of the documents or instruments referenced herein. Without limiting the scope of the prior sentence, obligations include obtaining the written consent of Seller or any Holder or Co-Holder to transfer any part of the Ownership which is subject to outstanding amounts financed and owed to Seller or any Holder or Co-Holder. In the event of a default by Owner, Owner shall not be entitled to reserve, use, or occupy any Club Accommodation, or to exercise any other rights, benefits, or privileges appurtenant to Owner's Ownership.

## F. ASSESSMENTS - ASSOCIATION'S SECURITY INTEREST

**20. Regular Assessments.** The current annual Regular Assessment for Owner's Ownership is $470.40 (U.S. Funds), based on the formula and rate of annual Regular Assessments currently established by the Association pursuant to the Club Instruments. Regular Assessments may be increased annually subject to the Club Instruments. Regular Assessments shall be used for Club Costs, including maintenance and operation of Club Accommodations (including for reserves) and operation and management of the Club, all as more particularly described in the Club Instruments.

**21. Special Assessments and Taxes.** The Association may levy special assessments subject to the Club Instruments. The Owner is also responsible for any tax that might be assessed by a civil taxing authority on the purchase of Owner's Ownership or the use of any Club Accommodations.

**22. Individual Charges.** Owner must pay separately for extra benefits including, but not limited to, if available, food, storage, extra maid service, purchase of goods, use of equipment, furnishings or facilities not normally provided as part of the Club Accommodation or the Club Property in which it is located, and exchange program services if available.

**23. No Warranties. SELLER MAKES NO EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY CONCERNING THE CLUB ACCOMMODATIONS OR CLUB PROPERTIES, INCLUDING ANY WARRANTIES, STATUTORY OR OTHERWISE, OF HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT AS MAY BE REQUIRED BY LAW AS OF THE DATE HEREOF. ACCORDINGLY, ANY REPAIRS TO THE CLUB ACCOMMODATIONS OR CLUB PROPERTIES NOT COVERED BY RESERVES MAY RESULT IN A SPECIAL ASSESSMENT.**

**24. Damage Charges.** Owner must pay, as an Individual Charge, any cost of repair or replacement for any damage caused by Owner, Owner's family or guests, or anyone else that Owner allows or permits to occupy a Club Accommodation during Owner's reserved use period.

**25. Association's Remedies/Security Interest.** To secure compliance with the Club Instruments, Owner hereby grants to the Association a Security Interest (the **"Association Security Interest"**) in Owner's Ownership and all proceeds thereof (i.e., the Collateral), which Association Security Interest is subject to and subordinate to the Seller Security Interest. The Association Security Interest shall remain in effect as long as Owner's Ownership remains in effect. Upon a breach by, or failure of, Owner to perform any of Owner's obligations under the Club Instruments, which breach or failure extends beyond any notice, cure and/or grace periods specifically provided for in the Club Instruments, the Association may, among other things (the Club Instruments describe all of the Association's rights and remedies for an Owner default thereunder): (a) foreclose the lien provided by the Association Security Interest, subject to any Seller Security Interest then in existence, and sell or retain Owner's Ownership in satisfaction of Owner's obligations to the Association or exercise any other right under Article 9 of the applicable Uniform Commercial Code; (b), if the Seller Security Interest no longer exists, terminate the Ownership; (c) suspend the Owner's rights to use the Points ascribed to Owner's Ownership and in certain instances, the Owner's rights to occupy a Club Accommodation for which the Owner had previously obtained a reservation; (d) sue the Owner personally for all amounts due to the Association; (e) deny request to transfer Owner's Ownership and Points in the Club Ownership Register; and/or (f) pursue any other right or remedy allowed by law, subject, however, to the Seller Security Interest (if still in effect) and subject to the terms and provisions of the Club Instruments.

## G. PURCHASE PRICE, FINANCE CHARGE, AND PAYMENTS

**26. Purchase Price, Prepayment.** Owner agrees to pay Seller the Purchase Price in U.S. Funds (less other Credits/Discounts) together with a Closing Fee, a document processing fee (**"Processing Fee"**) described in Section 28 below and the credit service charge (**"Finance Charge"**) as described in Section 30 Credit Terms. Payments shall be credited first on the interest then due, then on principal. Interest will begin to accrue on the day after the Contract Date. **This Installment Contract provides for an interest rate of SIXTEEN 99/100 (16.99%) per annum.** This amount is required to be included in the calculation of the Annual Percentage Rate and Finance Charge.

**27. Closing Fee.** Owner agrees to pay a $30.00 Closing Fee, which Seller will pay to First American Title Insurance Company.

**28. Processing Fee.** Owner understands and agrees to pay Seller a Processing Fee of $349.00 which is charged to all Owners, whether paying in cash or buying on credit to cover various processing services related to the sale including administration and preparation of various documents related to the sale. These services are separate and distinct from the services that Seller performs as settlement agent. Together, the Purchase Price, Processing Fee, Closing Fee and Finance Charge constitute the **"Total Sale Price"**.

**29. Time-Price Differential.** Together, the Purchase Price, Processing Fee, and Closing Fee equal the **"Total Cash Price"** (as identified below). The Total Cash Price and the Finance Charge (if any) equal the Total Sale Price (time-price).

H. DISPUTE RESOLUTION/ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT CERTAIN DISPUTES MUST BE RESOLVED BY BINDING ARBITRATION. IN ARBITRATION YOU GIVE UP THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES, AND ARE SUBJECT TO VERY LIMITED REVIEW.**

**32. DISPUTE RESOLUTION/ARBITRATION.** Any Disputes between the Parties shall be resolved as follows:

a. **Definition of Disputes.** Any Disputes between the Parties shall be resolved as follows:The Parties agree that any dispute, claim, suit, demand or controversy arising out of or relating to this Agreement (any *"Dispute"*) shall be determined exclusively and finally by individual arbitration, except as specified below. "Dispute" includes, without limitation, any claim regarding any breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase, and/or use of Owner's Ownership, Owner's use of Seller's properties, and/or Owner's participation in any activities/events sponsored, organized, or made available by Seller or any of its affiliates.

b. **Neutral Arbitrator/No Jury.** Any Dispute will be submitted to a neutral arbitrator, for a final and binding determination, known as an award. The arbitrator is an independent decision maker, appointed by the American Arbitration Association (*"AAA"*), who reviews and weighs evidence provided by both Parties, and issues an award enforceable in court. Decisions by an arbitrator are subject to very limited review by a court. Except as expressly provided below in this Dispute Resolution/Arbitration clause, the Parties waive and relinquish any and all rights to have a court or a jury resolve any Dispute. **The Parties expressly waive any right to a jury trial.**

c. **Certain Carve-Outs.** Despite this arbitration provision, the Parties reserve certain rights to proceed in court without waiving their right to arbitrate under this Dispute Resolution/Arbitration provision: (1) Seller reserves the right to seek emergency injunctive relief from a court to address any circumstances or behavior, by Owner or any person who obtained or is using Owner's rights and privileges, that Seller believes may present a risk or threat to the safety, security or reputation of any resort, guests, reservation system, data system, or other feature or location connected with Seller; (2) Owner reserves the right to file a Dispute in small claims court, as long as the matter remains in small claims court and proceeds only on an individual basis; (3) No provision of this Dispute Resolution/Arbitration provision shall limit the right of any Party to seek and use any available remedies, judicial or otherwise, for the purpose of foreclosing upon, or accelerating any debt secured by any property that is involved in any Dispute or subject to any Note, Promissory Notes, Mortgage Deed or Mortgage (the *"Dispute"*) executed by the Parties. Any such acceleration, or foreclosure, process shall be governed by the terms of the Loan Documents and applicable foreclosure law and procedures may occur outside the arbitration process if either of the Parties so elects, and shall not be deemed a waiver of the right to arbitrate any other issue involved in a Dispute.

d. **Applicable Rules/Location.** his arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration shall be administered by the AAA under its Consumer Arbitration Rules, available online at www.adr.org or by calling the AAA at 1-800-778-7879 (the *"AAA Rules"*). **The arbitration shall be held in the County of Orange, State of Florida unless the Parties agree to another location in writing, or the arbitrator decides to hold a telephonic hearing to reach a decision based solely on the Parties' submission of documents, or to designate another location reasonably convenient for the Parties.** In the event of any conflict between the AAA Rules and this Agreement, the provisions of this Agreement shall be controlling.

e. **Stay of Proceedings.** In the event that a Dispute involves both issues that are subject to arbitration and issues that are not subject to arbitration, the Parties unequivocally agree that any legal proceeding regarding the issues not subject to arbitration shall be stayed pending resolution of the issues subject to arbitration, except for any proceedings described in Paragraph 32(c) above, which actions shall proceed without a stay.

f. **Final and Binding.** The arbitration award shall be final and binding on the Parties. Judgment on the arbitrator's award may be entered in any state or federal court of competent jurisdiction.

g. **Payment of Fees.** The payment of all fees for registration, filing and administration of the arbitration, and the payment of arbitrator fees, shall be governed by the AAA Rules and applicable law, unless otherwise stated in this Agreement. The Parties shall bear their own legal fees and legal expenses for any arbitration proceeding.

h. **Notice and Good Faith Negotiation.** Any Party intending to file an arbitration demand against the other Party must notify the other Party at least thirty (30) days before filing. The Parties agree to attempt to negotiate a mutually agreeable resolution to resolve any such dispute or claim during this period. If a Party filing an arbitration demand fails to provide that notice, the other Party is entitled to seek a stay of the arbitration proceeding from the AAA for thirty (30) days and to participate in settlement negotiations during that period in good faith.

Case 6:20-cv-03296-MDH   Document 1-1   Filed 09/24/20   Page 19 of 68

**33. COMPLETE WAIVER OF JURY TRIAL.** TO THE EXTENT A CLAIM BY ONE OF THE PARTIES AGAINST THE OTHER PARTY IS NOT SUBJECT TO THE ARBITRATION PROVISION IN PARAGRAPH 32 OR TO THE EXTENT AN OTHERWISE ARBITRABLE DISPUTE IS LITIGATED IN COURT, THE PARTIES HEREBY UNCONDITIONALLY WAIVE ANY RIGHT TO A JURY TRIAL OF ANY AND ALL SUCH CLAIMS, DISPUTES, OR CAUSES OF ACTION, WHETHER NOW EXISTING OR HEREAFTER ARISING, OF ANY KIND. EACH OF THE PARTIES HEREBY AGREES THAT THE PARTIES MAY FILE A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE WAIVER OF ANY RIGHT TO TRIAL BY JURY.

**34. GOVERNING LAW.** Except as otherwise prescribed herein, this Agreement shall in all respects be construed, interpreted, and enforced in accordance with the substantive laws of the State of Florida, without regard to its conflicts or choice of law principles. The Parties agree that this Agreement evidences a transaction involving interstate commerce so as to ensure the applicability of the Federal Arbitration Act (*"FAA"*). In the event of a conflict between Florida Law, and the FAA, the FAA shall govern. If any portion of this Agreement is deemed invalid or unenforceable, the remainder of the Agreement shall remain in force.

**35. LIMITATION OF LIABILITY.** OWNER EXPRESSLY AGREES THAT IN NO EVENT SHALL SELLER, ITS PARENT, SUBSIDIARIES, AFFILIATES, SUCCESSORS, OR ASSIGNS BE LIABLE TO OWNER FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR ENHANCED DAMAGES ARISING OUT OF, RELATING TO, AND/OR IN CONNECTION WITH THE MARKETING PROCESS, SALES PROCESS, PURCHASE OF THE OWNERSHIP, USE OF THE OWNERSHIP, AND/OR ANY BREACH OF THIS AGREEMENT. **SELLER'S MAXIMUM LIABILITY TO OWNER ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, SHALL BE THE TOTAL AMOUNT PAID TO SELLER UNDER THIS AGREEMENT.** OWNER EXPRESSLY WAIVES ANY RIGHT TO SEEK RELIEF IN EXCESS OF THE LIMITATION OF LIABILITY SPECIFIED IN THIS PARAGRAPH

**I have read and agree to the Dispute Resolution/Arbitration Clause:**

**INITIALS: Owner(s)** _____, _____, _____, _____

[REMAINING PAGE INTENTIONALLY LEFT BLANK]

Case 6:20-cv-03296-MDH   Document 1-1   Filed 09/24/20   Page 20 of 68

## I. MISCELLANEOUS PROVISIONS

**37. Effectiveness of Agreement/Closing.** This Agreement will become effective upon execution by all parties and shall be deemed to have closed (the **"Closing"**) when all of the following conditions have occurred unless waived by Seller: (a) any applicable rescission period has expired; (b) the Owner has paid to Seller a down payment equal to not less than ten percent (10%) of the sum of the Purchase Price and the Processing Fee in immediately available funds; and (c) Seller has sufficient Points to deliver to Owner. In no event will the Closing occur later than the first anniversary of the Contract Date and if Closing has not occurred on or prior to the date of the first anniversary of the Contract Date, this Agreement shall be deemed automatically terminated and of no further force and effect. In the event this Agreement is automatically terminated in accordance with the provisions of the immediately preceding sentence and the Closing does not occur through no fault of Owner then within fifteen (15) days after the first anniversary of the Contract Date, Owner may request Seller to refund to Owner all funds paid by Owner under this Agreement.

**38. Termination of Agreement with Blocked Persons.** Under United States Presidential Executive Order 13224 (the **"Executive Order"**), Seller is required to ensure that it does not transact business with persons or entities determined to have committed, or pose a risk of committing or supporting, terrorist acts and those identified on the list of Specially Designated Nationals and Blocked Persons (the **"List"**), generated by the Office of Foreign Assets Control of the U.S. Department of the Treasury. The names or aliases of these persons or entities (**"Blocked Persons"**) are updated from time to time. In the event Seller learns that Owner's name appears on the List, Seller reserves the right to delay the Closing pending Seller's investigation into the matter. If Seller is advised and/or determines that Owner is a Blocked Person, Seller reserves the right to terminate this Agreement and/or to take all other actions necessary to comply with the requirements of the Executive Order. The provisions of this Section will survive Closing and/or termination of this Agreement.

**39. Purchase Money Protection.** All payments made by the Owner shall be protected by a surety bond held by First American Title Insurance Company, 400 International Parkway, Suite 380, Lake Mary, Florida 32746 (**"Escrow Agent"**), from the date of sale until Closing has occurred.

**40. Vacation Interest Policy.** Owner will be provided a vacation interest policy covering the Ownership at no additional charge.

**41. Definition of Terms.** All capitalized terms not otherwise defined within this Agreement shall have the meaning given to them in the Club Instruments.

**42. Receipt for Documents.** Owner acknowledges that the Owner has received a completed copy of this Agreement, required disclosure documents, including without limitation, the Public Offering Statement, Articles of Incorporation and Bylaws of the Association, the Declaration for the ClubWyndham Access Vacation Ownership Plan and the Regulations for the Club, and that the Owner has been given a satisfactory opportunity to read this Agreement.

**43. Electronic Signatures.** Owner(s) agrees that if this Agreement is signed electronically by the Owner(s), it is a transferable record.

**44. Refund.** If you have used or occupied the Club Accommodations using Points purchased pursuant to this Agreement, Wyndham Vacation Resorts, Inc. may subtract from your refund a reasonable charge to cover the length of stay plus the cost of damages to the property directly attributable to you or any member of your party. The charge shall be deemed reasonable if it does not exceed the amount of the maintenance fees attributable to the points used to cover the length of stay.

### NOTICE TO BUYER (OWNER):

**(1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.**

**(2) YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**(3) UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CIRCUMSTANCES TO OBTAIN A PARTIAL REFUND OF THE TIME CHARGE.**

Case 6:20-cv-03296-MDH   Document 1-1   Filed 09/24/20   Page 21 of 68

**45. "PURCHASER'S NONWAIVABLE RIGHT TO CANCEL". NOTICE YOU HAVE THE RIGHT TO CANCEL THIS AGREEMENT WITHIN FIVE (5) DAYS AFTER THE DATE OF THIS AGREEMENT. CANCELLATION MUST BE IN WRITING AND IF SENT BY MAIL TO WYNDHAM VACATION RESORTS, INC., ATTENTION: ACCOUNT SERVICING OPERATIONS -RESCISSION DEPARTMENT AT: P.O. BOX 94443, LAS VEGAS, NEVADA 89193 OR 10750 WEST CHARLESTON BOULEVARD, SUITE 130, LAS VEGAS, NEVADA 89135. ADDRESSED TO THE OTHER CONTRACTING PARTY AS SHOWN ON THIS AGREEMENT, CANCELLATION WILL BE ACCOMPLISHED AT THE MOMENT THE LETTER IS POSTMARKED. IF SENT BY MAIL, THE LETTER MAY BE CERTIFIED WITH A RETURN RECEIPT REQUESTED. YOUR RIGHT TO CANCEL CANNOT BE WAIVED.**

RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED.

X _____
Owner **Rosetta A Hutter**          Date Signed

X _____
Owner                               Date Signed

X _____
Owner                               Date Signed

X _____
Owner                               Date Signed

**16707 E 35th Terr S** _____
Street Address

Joint and several if more than one Owner

| | | |
|---|---|---|
| **Independence** | **MO** | **64055** |
| City | State | Zip |

WYNDHAM VACATION RESORTS, INC. and PTVO
Owners Association, Inc.

Phone (area code) **(816) 650-7116** _____

X _____
Authorized Agent          Date Signed

Email Address _____

Principal Contact _____

 **WYNDHAM**

## Acknowledgement Receipt
### for Disclosure Documents

Contract No. **00020-1741121**

Owner(s) hereby acknowledges that Owner has received copies of the documents and disclosures listed below.

- Home Loan Toolkit Brochure
- Governing Documents for CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN
- Trust Agreement and Accompanying Documents
- CLUB WYNDHAM Plus Program Summary
- WYNDHAM CLUB PASS, LLC - Disclosure Summary for Wyndham Club Pass Program
- CLUB WYNDHAM Plus Program - Points Chart for Club Brazil
- CLUB WYNDHAM Plus Member's Directory
- UCC Vacation Interest Policy
- Ownership Certificate
- Acknowledgment and Disclosure Statement for CLUB WYNDHAM Plus/Wyndham Rewards Program
- Wyndham Vacation Ownership - Financial Privacy Policy
- Servicing Disclosure Statement
- 30 Day Interest Free Certificate

Owner  **Rosetta A Hutter**　　　　　　　　　　　Date

Owner　　　　　　　　　　　　　　　　　　　　Date

Owner　　　　　　　　　　　　　　　　　　　　Date

Owner　　　　　　　　　　　　　　　　　　　　Date

CWA

No. 2932/Rev. 6-17

## ELECTRONIC DELIVERY ACKNOWLEDGMENT

_____  The undersigned purchaser(s) acknowledge that they have chosen **not** to receive all documents related to this purchase electronically and will receive a printed copy of all sales documents.

X  The undersigned purchaser(s) acknowledge that they have chosen to receive all documents related to this purchase electronically.

Purchaser(s) should not select electronic delivery of documents unless they can be viewed prior to the end of their cancellation period.

Dated this **11th day of November, 2017.**


_____          _____
Purchaser                                                              Purchaser


**Rosetta A Hutter**
_____          _____
Print Name                                                           Print Name


_____          _____
Purchaser                                                              Purchaser


_____          _____
Print Name                                                           Print Name

Case 6:20-cv-03296-MDH   Document 1-1   Filed 09/24/20   Page 24 of 68

Contract No.  **00020-1741121**



**MISSOURI**

**PUBLIC OFFERING STATEMENT**

**FOR**

**CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN**

Effective Date: December 14, 2007

Amended: October 10, 2017

I/We acknowledge receipt of the attached Missouri Public Offering Statement for ClubWyndham Access Vacation Ownership Plan.

_____
BUYER

_____
BUYER

_____
BUYER

_____
BUYER

_____
DATE

_____
SALESMAN'S NAME

(CWAMO-NP) No. 3041/3-17

## Alternative Media Election Statement

In lieu of receiving a printed copy of the **Missouri** Public Offering Statement and Governing Documents for **CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN,** the undersigned Purchaser(s) hereby expressly elect(s) to receive the above referenced documentation in an alternative media format as indicated by the delivery means checked below:

[X] Tablet (includes Exchange Program Documents)

[ ] Jump Drive

[ ] Compact Disc

Any computer system including Macintosh can be used to view the alternative media on compact disc or jump drive; however, Adobe® Acrobat Reader® is required for viewing. Adobe® Acrobat Reader® can be downloaded via the following link: https://get.adobe.com/reader/. The Tablet requires no additional software for viewing. Alternative media should not be elected unless the documentation can be viewed prior to the cancellation period.

UNDER MISSOURI LAW, A PURCHASER IS ENTITLED TO A FIVE (5) DAY RIGHT OF RESCISSION OF ANY TIMESHARE SALES CONTRACT. PURCHASERS SHOULD READ THE PUBLIC OFFERING STATEMENT BEFORE THE FIVE (5) DAY RIGHT OF RESCISSION PERIOD EXPIRES.*

Rosetta A Hutter
_____
Purchaser's Printed Name

_____
Signature

_____
Date

_____
Purchaser's Printed Name

_____
Signature

_____
Date

_____
Purchaser's Printed Name

_____
Signature

_____
Date

_____
Purchaser's Printed Name

_____
Signature

_____
Date

*If the property being purchased or the location of your purchased is located in a state which allows a longer time period for rescission, you are entitled to a longer rescission period. The other provisions of the above remain unchanged.

Case 6:20-cv-03296-MDH   Document 1-1   Filed 09/24/20   Page 26 of 68

# SalePoint Owner Information Sheet

Contract Number: **00020-1741121**     Date of Sale: **11-11-2017**     Points Purchased: **84,000**
Inventory Purchased: **CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN**

| Primary Owner Information | |
|---|---|
| Name: | Rosetta A Hutter |
| Address: | 16707 E 35th Terr S , Independence, MO 64055 |
| Phone number: | (816) 650-7116 **(Home)**          **(Work)**                                        **(Cell)** |
| Email address: | |
| Marital status: | |
| Spouse name: | |
| Title to be taken as: | Single Woman |

WVO has my/our express permission to contact me/us for telemarketing or advertising messages purposes by auto dialer, prerecorded, or artificial message at any cell phone or phone number I/we have provided above.

Additionally, I/we understand that WVO will share my/our cell phone or phone number(s) with WVO's affiliates and third-party service providers, such as billing or collection companies that WVO has contracted with to provide WVO with these types of services. WVO, its affiliates, and third-party service providers have my/our express permission to contact me/us by auto dialer, prerecorded, or artificial message at any cell phone or phone number I/we have provided, or at any number WVO may obtain for the following purposes: (a) to resolve an issue or dispute regarding my/our purchase of property and/or services from WVO; (b) in connection with payment processing; (c) to collect on a debt; or (d) as necessary regarding my/our purchase of property and/or services from WVO.

By granting WVO this consent, I/we understand that it is not a condition of my/our purchase of property and/or services from WVO and I/we have the right to refuse to give such consent.

| | | | |
|---|---|---|---|
| Signature   Rosetta A Hutter | Date  11/11/17 | Signature | Date |
| Signature | Date | Signature | Date |

No. 2528/Rev. 1-16

00020-1741121



## VIDEO AND SOUND RECORDING CONSENT FORM

I/we, **ROSETTA A HUTTER SINGLE WOMAN**, authorize Wyndham Vacation Ownership (*"Wyndham"*) to take and use video and sound recordings of the vacation ownership purchase document review.

I/we understand that the video and sound recordings (*"Recordings"*) may be used for quality assurance training or monitoring purposes, as well as to ensure compliance with industry regulations and for other business purposes.

I/we understand and agree to the conditions outlined in this video and sound recording consent form.

I/we understand that the Recordings are the property of Wyndham and I will not be given a copy of either recording, nor will the Recordings be part of any agreement or contract I enter into with Wyndham.

I/we acknowledge that I am fully aware of the contents of this consent form and am under no disability, duress, or undue influence at the time of my signing this consent form.

X _____     11/11/17
Owner **Rosetta A Hutter**                Date Signed

X _____
Owner                                     Date Signed

X _____
Owner                                     Date Signed

X _____
Owner                                     Date Signed

No. 3029/Rev. 3-17

# EXHIBIT to OWNERSHIP REVIEW

# BUYER'S ACKNOWLEDGMENT

Contract Number: **00020-1741121**

Purchaser(s): **Rosetta A Hutter Single Woman**

To ensure Purchaser understands the benefits of the timeshare purchase with **WYNDHAM VACATION RESORTS, INC.** whose address is **6677 Sea Harbor Dr., Orlando, FL 32821** and understands membership in the CLUB WYNDHAM® Plus Program (**"CLUB WYNDHAM Plus"**), it is important for Purchaser to review each of the following:

1. Timeshare Purchase. Purchaser acknowledges the purchase of a timeshare interest (**"Ownership Interest"**) in the ClubWyndham Access Vacation Ownership Plan (**"Access"**) whose address is 6677 Sea Harbor Dr. Orlando, **FL 32821.**

2. Assignment to CLUB WYNDHAM Plus. Purchaser understands the use rights in the Ownership Interest are being assigned to CLUB WYNDHAM Plus. In exchange, Purchaser will be allocated **84,000** CLUB WYNDHAM Plus Points **annually** based on the use rights stated in Purchaser's contract and that the Use Year is **APRIL 1ST** through **MARCH 31ST.**

3. Advanced Reservation Priority. Purchaser understands that Purchaser may request a reservation at the Home Resort up to thirteen (13) months in advance of my check-in date, utilizing the Advanced Reservation Priority (**"ARP"**), and the Home Resort consists of those resorts which are part of Access and the priority is limited to the extent of the interests owned by Access in each resort.

4. Future CLUB WYNDHAM Plus Changes. Purchaser acknowledges that the current CLUB WYNDHAM Plus Program features and benefits are described in the written program directories and disclosure materials provided with the purchase and that such features and benefits can change or be eliminated in the future. Purchaser further acknowledges that no promises or guarantees were made to Purchaser either verbally or in writing of any future program enhancements or resort amenity additions or benefits.

5. Personal Use and Enjoyment. **There is no assurance that Purchaser may resell a timeshare for a certain price or on particular terms. Purchaser acknowledges that this purchase is (i) for personal use and enjoyment and not for commercial or investment purposes and (ii) not being made based upon any representation that the timeshare interest has any future market value or resale potential.**

6. No Expectation of Tax Benefit or Profit. Purchaser acknowledges that the purchase of the Ownership Interest was not made with any expectation of the deductibility under federal or state tax laws or deductibility of other expenses relating to the purchase or with any expectation of deriving any profit or tax advantage, including from:

    **Resale Assistance      Rental Income      Investment      Tax Benefit**

7. Not Buying for Maintenance Fee Offset. Purchaser understands that Wyndham Vacation Resorts may present various programs from time to time that may provide Purchaser with opportunities to offset a portion of the maintenance fee obligation associated with Purchaser's Ownership Interest. Purchaser acknowledges the purchase made today was not made based on any of these programs and has no expectation that Purchaser's participation in these programs will fully or continuously offset any or all of the maintenance fee obligation.

8. No Pets. Purchaser understands that pets are not allowed at any resort property, except for service animals which have been trained to work or perform tasks for the benefit of an individual with a disability.

No. 2707/Rev. 9-15

  **WYNDHAM**

Last Name

## Ownership Review

| | | |
|---|---|---|
| New Points Purchased Today* | 84,000 | |
| Use Year/ Usage Period | Apr 1 - Mar 31   /   Annual | |
| Inventory Purchased | CWA | |

Permanent VIP Level _____

Introductory VIP Level _____

## Other Memberships and Enrollments

| | | Other _____ |
|---|---|---|
| External Exchange Company | RCI | |
| Internal Exchange Company | CLUB WYNDHAM Plus | |
| PlusPartners | yes | |
| Perks by Club Wyndham | yes | |
| Wyndham Rewards | yes | |
| Club Pass | yes | |
| One Year Price Freeze | yes | |

800-251-8736
888-884-4321 - VIP

Today's Incentive    **INCLUDE 116,000 BONUS POINTS AND RCI BENEFITS**

## Your Financial Deposit Today

| | | | |
|---|---|---|---|
| Additional Deposit Today (form of payments) | 1 New PayPal Credit | $ | 4,843.11 |
| | 2 | $ | |
| | 3 | $ | |
| Total Deposit Applied to Contract Today | | $ | 4,843.11 |

## Quality Assurance Only

| | | |
|---|---|---|
| Loan Summary | | |
| Loan Payment Amount for New Contract Today | $ | 175.57 |
| Total Loan Balance with Wyndham on New Contract Today | $ | 10035.89 |
| Auto Pay   yes | personal CH/CC | |
| First Payment Date on New Contract | 12/26/2017 | |

| | | |
|---|---|---|
| CLUB WYNDHAM Plus Summary (Maintenance Fee) | | |
| Amount for Today's Contract(s) | | 81.45 |
| Auto Pay   yes | Auto Pay Method   personal checking/CC | |
| First Payment Date | | |

**Loan Obligations financed today through Wyndham Rewards Credit Card and/or PayPal Credit**    4843.11

I have reviewed and agree with the information noted above.

I agree that I will be a member of the programs noted above under "Your Other Memberships and Enrollments." (Certain programs may carry additional enrollment and renewal fees. Please refer to the disclosure documents for additional information.)

I have reviewed and understand the attached Buyer's Acknowledgment.

I agree that I will be a member of CLUB WYNDHAM Plus and that I have reviewed and agreed to the terms of the attached Assignment Agreement and Use Restriction.

I have reviewed and agree to abide by the terms and conditions of the Enrollment Agreement.

_____
Owners Name

Wyndham Quality Assurance Signature

Roe Cmitker
Wyndham Quality Assurance Print Name

_____
Owners Name

_____
Site Contact #

Site Contact Email

*Points total does not include existing Bonus Point Contracts
**Amount financed does not include any existing loan balances with any third party companies outside of today's purchase (i.e., PayPal Credit, Bill Me Later, Wyndham Rewards Credit Card)

For New Owners        Your owner website: *myclubwyndham.com*        21516

## Pre-Authorized Auto Pay Plan Set-up Form

**Member Name(s):** Rosetta A Hutter
**Contract #:** 00020-1741121
**Member #:** 00203423356

____ Checking* ____ Savings*

Credit Card Type: Visa**

**Routing:**

Credit Card #: XXXXXXXXXXX5112

**Bank Account #:**

Name on Card: Rosetta A Hutter

**Name on Account:**

(As it appears on card)

**Name of Bank:**

____ Checking* ____ Savings*

Credit Card Type: VISA**

**Routing:**

Credit Card #: XXXXXXXXXXX5112

**Bank Account #:**

Name on Card: Rosetta A Hutter

**Name on Account:**

(As it appears on card)

**Name of Bank:**

____ Checking* ____ Savings*

Credit Card Type: Visa**

**Routing:**

Credit Card #: XXXXXXXXXXX5112

**Bank Account #:**

Name on Card: Rosetta A Hutter

**Name on Account:**

(As it appears on card)

**Name of Bank:**

### AUTHORIZATION AGREEMENT

I/(We) authorize Wyndham Vacation Resorts, Inc., or any of its related or affiliated entities ("Company") to electronically debit or charge to my (our) bank account(s) or credit card account(s) indicated above the amounts due on the dates indicated under the contract(s) and membership(s) described above and any agreement related thereto. I understand that amounts due for maintenance fees and charges may increase due to changes in maintenance fees and charges as provided in my vacation ownership's governing documents, and I (we) hereby authorize Company to adjust the payment amounts due accordingly and to electronically debit or charge to my (our) bank account(s) or credit card account(s) the adjusted amount.

If the payment due date authorized herein falls on a weekend or holiday, I (we) understand that the payment may be executed on the next business day. I (we) understand that because this is an electronic transaction, these funds may be withdrawn from my account or charged to my credit card each period as soon as the above noted transaction date. Any transaction rejected for Non-Sufficient Funds (NSF) will be subject to a fee of up to $50 (as permitted by law) initiated as a separate transaction. If the amount due is not timely paid, late fees and interest may be charged as provided in the contract(s) and membership(s) described above or in my (our) vacation ownership's governing documents. I (we) understand that Company may at its discretion attempt to process any rejected or unsuccessful charge again within ten (10) days.

I (we) understand that this authorization will remain in effect until revoked by me (us) either (i) by telephone at 1-866-418-3809 or (ii) in writing by mail to Wyndham Consumer Finance, P.O. Box 98944, Las Vegas, Nevada 89193-8944. I (we) may also revoke this authorization by notice to the financial institution(s) holding my (our) bank account(s) or credit card account(s) indicated above. I (we) agree to notify Company in writing of any changes to my bank account(s) or credit card account(s), or termination of this authorization, at least fifteen (15) days prior to the next billing date. I (we) also hereby authorize Company to update my (our) bank account and/or credit card account details with information received from any card or account updating services.

I (we) acknowledge that the origination of ACH transactions must comply with the provisions of U.S. law. I will not dispute Company's recurring billing with my bank account(s) or credit card account(s) so long as the transactions correspond to the terms indicated in this agreement. I (we) understand that Company reserves the right to terminate this payment plan or my (our) participation therein at any time.

This authorization form cannot be used to change your existing due date. This agreement becomes effective for the next scheduled payment upon receipt of the signed agreement. Please allow up to seven (7) business days for processing.

| Authorized Signature on Payment Plan: | Print Name: | Date: |
|---|---|---|
| Signature: | Print Name: Rosetta A Hutter | Date: |
| Signature: | Print Name: | Date: |
| Signature: | Print Name: | Date: |
| Signature: | Print Name: | Date: |

Mail Form to: P.O. Box 98944, Las Vegas, Nevada 89193-8944    For Inquiries: 1-866-418-3809

Enroll Online: www.clubwyndham.com/payments

*Order Type:*

SALE

*Date/Time:*

11/11/2017 02:35PM EST

*Merchant Information:*

Wyndham Vacation Resorts or Shell Vacations, LLC
20 Branson

*Owner Information:*

ROSETTA HUTTER
16707 E 35TH TERR
INDEPENDENCE, MO 64055

| Order Id | Contract Number | Invoice Id | Charge Code | Amount | Result |
|----------|-----------------|------------|-------------|--------|--------|
| 245868756 | 000201741121 | | CWA Down Payment | $4,813.11 | APPROVED |
| 245868756 | 000201741121 | | CWA Fee | $30.00 | APPROVED |
| | | | Total Amount | $4,843.11 | |

*Payment Method*            PayPal Credit
*Payment Account Number*    ############4952

X _____

*Signature of* ROSETTA HUTTER

Thank you for your business

| FACTS | WHAT DOES WYNDHAM VACATION OWNERSHIP DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• Credit scores and payment history<br>• Purchase history and account transactions |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Wyndham Vacation Ownership chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Wyndham Vacation Ownership share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes - To offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes - information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes - information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

| To limit our sharing | • Mail in the form below<br><br>Please note:<br><br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|

| Questions? | Call (WVR) 800-251-8736 or go to www.wyndhamvacationresorts.com<br>Call (WBW) 888-648-7363 or go to www.worldmarkbywyndham.com<br>Call (MGVC) 866-645-4775 or go to www.mymargaritavillevacationclub.com |
|---|---|

| Mail-in Form | |
|---|---|
| If you have a joint account, your choice(s) will apply to everyone on your account unless you mark below. ___ Apply my choices only to me | Mark any/all you want to limit:<br><br>___ Do not share my personal information with nonaffiliates to market their products and services to me.<br><br>___ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.<br><br>___ Do not allow affiliates to use my personal information to market to me.<br><br>Name<br>Address<br>City, State Zip<br>Member / Contract # |
| Mail To: | Member Privacy (Identify Wyndham Vacation Resorts, WRDC/WorldMark by Wyndham, or other) P.O. Box 98944 Las Vegas, Nevada 89193-8944 |

## Who we are

| Who is providing this notice? | Wyndham Vacation Ownership (Wyndham Vacation Resorts, Wyndham Resort Development Corp, Wyndham Consumer Finance) |
|---|---|

## What we do

| How does Wyndham Vacation Ownership protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
|---|---|
| How does Wyndham Vacation Ownership collect my personal information? | We collect your personal information, for example, when you<br>• Apply for financing or give us your income information<br>• Provide account information or provide employment information<br>• Give us your contact information<br>We also collect your information from others, such as credit bureaus, affiliates, or other companies |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes--information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account unless you tell us otherwise. |

## Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with a Wyndham name including, Wyndham Vacation Resorts, Wyndham Resort Development Corp., Wyndham Consumer Finance.* |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Nonaffiliates we may share with may include other developers, financial institutions and services companies, associations and exchanges, and other companies.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners may include other developers, financial institutions, financial services companies, and other companies* |

## Other important information

VT: Accounts with a Vermont mailing address are automatically treated as if they have limited the sharing as described on page 1. For joint marketing we will only disclose your name, contact information and information about your transactions.

CA: Accounts with a California mailing address are automatically treated as if they have limited the sharing with nonaffiliates as described on page 1. You may receive a separate notice regarding your rights and additional choices.

## Servicing Disclosure Statement

Lender:  __Wyndham Vacation Resorts, Inc.__

Address:  __6277 Sea Harbor Dr., Orlando, FL 32821__

Date:  __11-11-2017__

SERVICING DISCLOSURE STATEMENT NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED

You are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (*"RESPA"*) (12 U.S.C. 2601 *et seq.*). RESPA gives you certain rights under Federal law. This statement describes whether the servicing for this loan may be transferred to a different loan servicer. *"Servicing"* refers to collecting your principal, interest, and escrow payments, if any, as well as sending any monthly or annual statements, tracking account balances, and handling other aspects of your loan. You will be given advance notice before a transfer occurs.

*Servicing Transfer Information* [Check the applicable provision]

☒ We may assign, sell, or transfer the servicing of your loan while the loan is outstanding.

☐ We do not service mortgage loans of the type for which you applied. We intend to assign, sell, or transfer the servicing of your mortgage loan before the first payment is due.

☐ The loan for which you have applied will be serviced at this financial institution and we do not intend to sell, transfer, or assign the servicing of the loan.

 **WYNDHAM**

Contract No. **00020-1741121**

## 30 DAYS INTEREST FREE CERTIFICATE

Date: **11-11-2017**

Buyer(s): **ROSETTA A HUTTER**

This certificate gives you the option of paying no interest if you pay the total pay off amount of **$10,035.89** within 30 days of the date listed above.

Please make your personal check payable to "WYNDHAM VACATION RESORTS, INC." and mail it along with a copy of this form to Wyndham Consumer Finance at P.O. Box 98940, Las Vegas, Nevada 89193-8940. In order to honor this certificate, payment needs to be received within 30 days from the date above. Please direct all questions to the Financial Services department at: (888) 739-4016 (English/Spanish), (800) 308-8072 (Portuguese) or (866) 331-1209 (Japanese).

Credit Card or Other: Call Toll Free: 1-888-739-4016 (English/Spanish)
1-800-308-8072 (Portuguese)
1-866-331-1209 (Japanese)
8:00am to 8:00pm Eastern Monday-Friday
9:00am to 6:00pm Eastern Saturday-Sunday

No. 179/Rev. 3-16

 **WYNDHAM**

## ACKNOWLEDGMENT AND DISCLOSURE STATEMENT
### Club Wyndham® Plus/Wyndham Rewards℠ Program

1. The CLUB WYNDHAM Plus/Wyndham Rewards Program as more fully described by the Program Rules herein.

2. Use and participation in the CLUB WYNDHAM Plus/Wyndham Rewards Program is completely voluntary and the payment of any fee or other cost is only required upon such use or participation.

3. The CLUB WYNDHAM Plus/Wyndham Rewards Program is not assignable or otherwise transferable.

4. If all or a portion of the CLUB WYNDHAM Plus/Wyndham Rewards Program becomes unavailable the offering of this program may be terminated.

5. The continued availability of the CLUB WYNDHAM Plus/Wyndham Rewards Program is not necessary for a purchaser's use and enjoyment of any accommodations in the timeshare plan purchased.

6. If you cancel your purchase contract within the stated cancellation period, the CLUB WYNDHAM Plus/Wyndham Rewards Program will not be available.

### Club Wyndham® Plus/Wyndham Rewards℠ Program Rules

The CLUB WYNDHAM Plus/Wyndham Rewards Program Rules (*"Rules"*) are promulgated this 20th day of July, 2009, by Wyndham Fulfillment Group, LLC (*"Wyndham Fulfillment Group"*) for the benefit of CLUB WYNDHAM Plus Members. The Rules are as follows:

**Program Rules**

a. The CLUB WYNDHAM Plus/Wyndham Rewards Program (*"Program"* ) means that program offered by Wyndham Fulfillment Group in which CLUB WYNDHAM Plus Members may trade Qualified CLUB WYNDHAM Plus Points for Wyndham Rewards points. All terms used herein shall have the same meaning given to them in the documents creating the CLUB WYNDHAM Plus program, as amended from time to time.

b. The Wyndham Rewards Program is offered by Travel Rewards, Inc., a subsidiary of Wyndham Hotel Group, LLC, its successors and assigns, for use by guests of participating Wyndham hotel and resort properties whereby such guests can accumulate points redeemable for, among other things, hotel rooms at participating Wyndham hotels and resorts worldwide, car rentals, travel activities, and purchases from participating merchants or service providers. The rules for the Wyndham Rewards Program will be distributed separately from this document, and are incorporated herein by reference as if fully set forth. (See current Wyndham Rewards Membership Guide).

c. Neither Wyndham Fulfillment Group nor Wyndham Vacation Ownership, Inc., or its subsidiaries guarantee that a CLUB WYNDHAM Plus Member utilizing the Wyndham Rewards Program will be able to stay at a particular participating Wyndham hotel or resort during any specific time or will be able to redeem Wyndham Rewards points for any particular activity or service.

d. Wyndham Fulfillment Group reserves the right to modify, alter, delete or add new terms and conditions to the Program Rules at any time without notice. Wyndham Fulfillment Group may terminate the Program at any time by providing written notice to CLUB WYNDHAM Plus Members. In that event, the right to trade Qualified CLUB WYNDHAM Plus Points for Wyndham Rewards points will end. Travel Rewards, Inc. may terminate the Wyndham Rewards Program at any time as described in the current Wyndham Rewards Membership Guide.

e. Travel Rewards, Inc. reserves the right to modify, alter, delete or add new terms and conditions to the Wyndham Rewards Program at any time without notice. This includes modifying, altering, adding or deleting Wyndham Rewards point values, redemption levels, conversion ratios, conditions for active status, rewards, "Earning Participants" or "Rewards Participants" to the Wyndham Rewards Program at any time without notice. In addition, Travel Rewards, Inc. may convert the Wyndham Rewards Program and members points into different awards programs having different point values at any time without notice. This means that the number of Wyndham Rewards points needed to reach a rewards level may be increased, the time for earning them reduced, or the rewards changed, so you may not be able to obtain, earn or claim certain rewards no matter how long you participate in the Wyndham Rewards Program. To view or obtain the most up to date terms and conditions for the Wyndham Rewards Program, visit wyndhamrewards.com or call 1-866-996-7937.

No. 2242/Rev. 9-15

f.  All redemption of Wyndham Rewards points will be in accordance with the procedures outlined in the Wyndham Rewards Membership Guide. A Wyndham Rewards account may be maintained in the name of each CLUB WYNDHAM Plus Member, however, Wyndham Rewards points will be credited to only one Wyndham Rewards account, not multiple accounts, based upon direction received by CLUB WYNDHAM Plus from the member where the CLUB WYNDHAM Plus membership is held by more than one individual.

g.  CLUB WYNDHAM Plus Members may request to trade all or part of their regular use year Qualified CLUB WYNDHAM Plus Points for Wyndham Rewards points during the twelve (12) month period prior to their use year start date. A minimum of 1,000 Qualified CLUB WYNDHAM Plus Points may be traded for Wyndham Rewards points. Requests to trade for Wyndham Rewards points are non-reversible and are considered a final transaction. Multiple requests are permitted provided they are submitted prior to the CLUB WYNDHAM Plus Member's use year start date.

h.  "Qualified CLUB WYNDHAM Plus Points" means those CLUB WYNDHAM Plus Points associated with ownership interests purchased directly through Wyndham Vacation Resorts, Inc. or its affiliates, such ownership interests acquired by will or intestate succession, or such ownership interests acquired by an "Immediate Relative" of the CLUB WYNDHAM Plus Member. "Immediate Relative" includes parents, spouses, domestic partners, siblings, children and grandchildren. Wyndham Fulfillment Group, in its sole discretion, with or without prior notice, has the unilateral right to expand or contract the list of persons eligible to participate in the Program at any time in the future.

i.  Subject to Paragraphs (g) and (h) above, the following CLUB WYNDHAM Plus Points are not eligible to be traded for Wyndham Rewards points: CLUB WYNDHAM Plus Points which are not acquired through Wyndham Vacation Resorts, Inc. or its affiliates, CLUB WYNDHAM Plus Points acquired through a non-Wyndham affiliated broker, Bonus Points, PIC Points, Borrowed CLUB WYNDHAM Plus Points, Rented CLUB WYNDHAM Plus Points, Transferred CLUB WYNDHAM Plus Points, Discovery Program Points and Pool Credits. Wyndham Fulfillment Group, in its sole discretion, with or without prior notice, has the unilateral right to expand or contract the list of eligible CLUB WYNDHAM Plus Points which may be traded for Wyndham Rewards points.

j.  Participation in the Program, which includes the ability to request a trade for Wyndham Rewards points and the depositing of Wyndham Rewards points in a CLUB WYNDHAM Plus Members Wyndham Rewards account, will not be allowed if the CLUB WYNDHAM Plus Member is delinquent in the payment of any applicable maintenance fees, taxes, special assessments, or CLUB WYNDHAM Plus Program Fees. Participation will also not be allowed by CLUB WYNDHAM Plus Members with delinquent mortgage payments to Wyndham Vacation Ownership, Inc., or a subsidiary thereof, or who are otherwise in default under their sales contract, if any. In addition, a CLUB WYNDHAM Plus Member will not be permitted to request a trade for Wyndham Rewards points if their vacation ownership account is pending an upgrade transaction.

k.  CLUB WYNDHAM Plus Members may trade for Wyndham Rewards points every other calendar year. Each request to trade will require a separate transaction fee.

l.  The fee to trade for Wyndham Rewards points is payable at the time each request to trade for Wyndham Rewards points is made. The current fee is $99.00, is non-refundable, and is subject to change without notice.

m.  Upon requesting a trade of Qualified CLUB WYNDHAM Plus Points for Wyndham Rewards points, the Qualified CLUB WYNDHAM Plus Points traded through the Program will be assigned to Wyndham Fulfillment Group for its own purposes including, but not limited to, renting accommodations to the public.

n.  Wyndham Rewards points will become available to the CLUB WYNDHAM Plus Member for use at the start of the use year corresponding with the Qualified CLUB WYNDHAM Plus Points that are traded.

o.  The Wyndham Rewards points which may be received when trading Qualified CLUB WYNDHAM Plus Points is based on the following formula: 400 Wyndham Rewards points for each 1,000 Qualified CLUB WYNDHAM Plus Points traded. Wyndham Fulfillment Group reserves the right to change the above formula at any time without notice.

p.  Questions relating to the Program or trading Qualified CLUB WYNDHAM Plus Points for Wyndham Rewards points should be directed to the Vacation Planning Center (1-800-251-8736 Option 1).

No. 2242/Rev. 9-15



Contract No. 00020-1741121
Member No. 00203423356

## **WYNDHAM**

## Acknowledgement of Price Freeze

### One Year Price Freeze

#### *Lock in today's prices for the next 12 months.*

**Terms and Conditions**

- Future purchases will be locked in at the price that inventory is selling for today. This offer does not include special discounts or Presidential Reserve inventory.

- To be eligible, you must be in good standing and must not be delinquent in the payment of any maintenance fees, taxes, special assessments, CLUB WYNDHAM® Plus Program Fees, or loan payments.

- Your price freeze will expire 12 months from the date on which a purchase agreement is fully executed.

- Subject to availability.

No. 2441/Rev. 10-15

SAMPLE ONLY

# Ownership Certificate

## CLUB WYNDHAM®Access Vacation Ownership Plan

This certificate is issued by the PVTO Owners Association, Inc. and signifies the below owner(s) as a member(s) of the association with the right to participate in the CLUB WYNDHAM Access Vacation Ownership Plan.

Owner(s): __Rosetta A Hutter Single Woman__

Issued this Day of____ __November 11TH, 2017__

*Contract Number:____ __00020-1741121__

Annual Or Biennial:____ __Annual__

Number of Points _____ __84,000__

*This certificate supersedes any previously issued certificates for the above contract number.



CLUB WYNDHAM

No. 2064/Rev. 10-12

 **WYNDHAM**

 **WYNDHAM REWARDS®**

Contract No. 00020-1741121
Member No. 00203423356

# Wyndham Rewards® Maintenance Fee Reference Guide for Existing Cardholders

## How You Earn

Wyndham Rewards hotel stays
10 Wyndham Rewards Points per $1 spent
*Minimum of 1000 points per night stay*



| Wyndham Rewards Points Earned | The amount of CLUB WYNDHAM Plus Assessment Fees (including POA Maintenance Fees) that can be paid from converting Wyndham Rewards Points |
|---|---|
| 40,000 | $200 |
| 120,000 | $600 |

1,000 CLUB WYNDHAM Points equals 400 Wyndham Reward Points. CLUB WYNDHAM Plus Points to Wyndham Rewards Conversion Rates subject to change, conversion limited to once every other calendar year and conversion fee of $99.00 per conversion applies.

10,000 Wyndham Rewards Points equals $50 towards CLUB WYNDHAM Plus Assessment Fees (including POA Maintenance Fees). Redemption Levels are subject to change and are maintained exclusively by Wyndham Rewards.

**EXHIBIT to OWNERSHIP REVIEW**
ClubWyndham Access
CLUB WYNDHAM® Plus
VACATION OWNERSHIP ASSIGNMENT AGREEMENT
AND USE RESTRICTION
00020-1741121
Contract Number

THIS VACATION OWNERSHIP ASSIGNMENT AGREEMENT AND USE RESTRICTION (*"Agreement"*) is made this 11th day of November, 2017, by and between Wyndham Vacation Resorts, Inc., a Delaware Corporation, whose address is 6277 Sea Harbor Dr. Orlando, FL 32821 (*"Plan Manager"*), and Rosetta A Hutter Single Woman (*"Owner"*).

WHEREAS, the Second Amended and Restated FairShare Vacation Plan Use Management Trust Agreement effective March 14, 2006, recorded in the Office of the Circuit Clerk in Cleburne County, Arkansas, and other various jurisdictions, which document is incorporated herein by reference, as amended from time to time (*"Trust Agreement"*), sets forth the terms, restrictions and conditions of the FairShare Vacation Plan (*"Plan"*) described therein as well as the obligations of the Plan Manager to those owners who have subjected their property to the Trust Agreement by assigning the use, occupancy and possessory rights in such property to the FairShare Vacation Plan Use Management Trust (*"Trust"*) or who acquire property which has been previously subjected to the Trust Agreement and whose use, occupancy and possessory rights have previously been assigned to the Trust (*"Assignment"*), all in accordance with the terms and conditions of the Plan; and

WHEREAS, Owner is the purchaser of an ownership interest (*"Ownership"*) in the ClubWyndham Access Vacation Ownership Plan (the *"Club"*) which entitles Owner to use Owner's points to reserve the use of accommodations in the Club as described in the ClubWyndham Access Vacation Ownership Plan Retail Installment Contract Purchase and Security Agreement (*"Contract"*) #00020-1741121; and

WHEREAS, Owner desires to subject the Ownership to the Trust Agreement and assign the use, occupancy and possessory rights in the Ownership to the Trust, all in accordance with the Trust Agreement.

NOW THEREFORE, in consideration of $Fee Waived, paid by Owner to Plan Manager, and the mutual promises contained herein and in furtherance of the Assignment, the parties agree as follows:

1. **Definitions.** Except as otherwise provided herein, capitalized terms shall have the same definition as set forth in the Trust Agreement. This Agreement, as well as the interest of the Trustee set forth herein, shall be subject to the prior rights in the Contract of any mortgagee or secured party. Nothing contained herein shall contravene the obligation of Owner under the Contract or security agreement executed in connection with Owner's purchase of the Ownership.

2. **Assignment.** Owner hereby subjects the Ownership to the Trust Agreement and assigns the use, occupancy and possessory rights in the Ownership to the Trust, to be administered in accordance with the Trust Agreement, and agrees that Owner's Use Rights shall be governed by the Trust Agreement.

3. **Points.** Plan Manager shall assign Owner 84,000 Points which shall be used through the CLUB WYNDHAM Plus Program to reserve accommodations subjected to the Trust in accordance with the Trust Agreement. Points are symbolic of the value of Owner's Use Rights and are to be used in each full year.

4. **Voting Rights.** Notwithstanding the Assignment, Owner shall retain Owner's voting right in the PTVO Owners Association (*"HOA"*).

5. **CLUB WYNDHAM Plus Assessment.** Owner agrees to pay an annual CLUB WYNDHAM Plus Assessment (*"Assessment"*) to the Trust for certain expenses of the Plan in accordance with the Trust Agreement, which Assessment shall include Owner's share of the expenses associated with the operation and maintenance of the Plan and may include Owner's proportionate share of Owner's regular assessment attributable to the Ownership (*"HOA Fee"*). The Assessment shall be payable annually in advance in either one installment or in monthly installments pursuant to an approved auto pay plan. The Plan Manager shall cause the HOA Fee portion of the Assessment to be deposited into a CLUB WYNDHAM Plus escrow account (*"Escrow Account"*) until such funds become due and are delivered to the HOA. Owner authorizes the Trustee or its assignees to withdraw the HOA Fee from and out of the Escrow Account and pay same over to the HOA so long as said Ownership is subjected to the Plan.

6. **Association.** Pursuant to the Assignment, Owner becomes a Member of the FairShare Vacation Owners Association (*"Association"*) and as such agrees to abide by all requirements set forth in the Articles and Bylaws of the Association. Owner also has the right to vote Owner's interest as a Member of the Association.

7. **Use and Occupancy Rights.** Owner hereby assigns Owner's use and occupancy rights in the Ownership to the Trust for the period of time this Agreement is effective and accordingly grants to the Trustee and the Plan Manager the right to assign the possession and Use Rights of the Ownership on an annual basis or biennial basis, if applicable, to other Members in the Plan in return for Owner's Use Rights to utilize the CLUB WYNDHAM Plus Program of exchange in accordance with the Trust Agreement.

8. **Effective Date.** This Agreement shall become effective on the date first written above.

9. **Termination.** This Agreement and all rights granted hereunder may be terminated by Owner, or by Owner's successors or assigns, at any time; however, any such termination shall be subject to any outstanding reservations. Election to terminate will be noted but all reservations existing as of the termination date will be honored. No new reservations will be accepted on or after the termination date. If this Agreement is terminated, future access to the Plan will require approval of the Plan Manager and include a conversion fee. If not terminated sooner, termination will occur on the earlier of the following dates: (a) termination of the Club; (b) termination of the Plan; or (c) termination by Trustee in accordance with the Trust Agreement. Upon termination, Owner's Points will be extinguished and Owner will no longer have the right to make reservations in accommodations subjected to the Trust Agreement and all use, occupancy and possessory rights in the Ownership shall automatically revert to Owner.

10. **Binding Agreement.** This Agreement and the terms and conditions of the Trust Agreement shall be binding upon Owner, Owner's heirs, successors and assigns, provided, however, the application of this covenant on the Ownership may be terminated in accordance with paragraph 9 above, or shall terminate automatically if and when the Ownership shall be held by Wyndham Vacation Resorts, Inc. (*"Wyndham"*) subsequent to conveyance to Owner.

11. **Default.** Upon termination of this Agreement or in the event Owner defaults on Owner's obligation under the Contract or security agreement resulting in the termination of the Contract or the acquisition of the Ownership by Owner's secured party, this Agreement shall be deemed terminated and cancelled and all rights of Owner hereunder shall cease. Upon such termination Plan Manager shall cause the use, occupancy and possessory rights in the Ownership to be re-assigned back to Owner or the acquiring secured party, subject to any Owner commitments or confirmed reservations by another Plan participant which may have been made pursuant to the Plan. Any fees due the Plan by Owner shall be deducted at the date of termination from the Assessments paid by Owner. Upon such termination, all benefits and obligations of Owner under the Contract or security agreement shall continue in force and effect.

12. **CLUB WYNDHAM Plus VIP Program.** The CLUB WYNDHAM Plus VIP Program (*"VIP Program"*) and its accompanying benefits are made available by Wyndham to CLUB WYNDHAM Plus Members who have achieved certain eligibility criteria as set forth in the CLUB WYNDHAM Plus Member's Directory (*"Member's Directory"*). Owner should refer to the Member's Directory for the terms and conditions of the VIP Program.

13. **Miscellaneous.** The parties hereto agree to execute any additional instruments which may be necessary or convenient to carry out the intent and purpose of this Agreement.

No. 2009/Rev.9-15

 **WYNDHAM**

# EXHIBIT TO OWNERSHIP REVIEW

## Enrollment Agreement

Date: **11-11-2017**          Member No.: **00203423356**          Contract No.: **00020-1741121**

Member Name: **Rosetta A Hutter**

Member Name:

Member Name:

Member Name:

Street Address: **16707 E 35th Terr S**

City: **Independence**          State: **MO**          Zip Code: **64055**

Country: **USA**          Email Address:

Home Phone: **(816) 650-7116**          Work Phone:

---

**Exchange Enrollment**

Please check appropriate enrollment(s): ☒ RCI Member   ☐ II Member   ☒ Plus Partners Member

I am or have been an RCI member   ☐ Yes   ☒ No

Resort Name: _____   Resort ID: _____   RCI ID #: _____

**Perks by CLUB WYNDHAM**

Perks by CLUB WYNDHAM is a unique entertainment, recreation, vacation and travel program offering a wide variety of benefits and privileges to its Members on an annual basis. Perks by CLUB WYNDHAM membership entitles the Member's family, including up to two adults and their dependent children up to age 21, to all benefits, discounts and other privileges as provided in the terms and conditions.

INITIAL ANNUAL MEMBERSHIP FEE $ _____ **Complimentary**

Initial Annual Membership Fee includes annual membership for first term of twelve (12) months.

ANNUAL MEMBERSHIP FEE BASED ON MEMBERSHIP TYPE:

| Membership Type | Annual Membership Fee |
|---|---|
| CLUB WYNDHAM | $59.95 |
| CLUB WYNDHAM Silver | $59.95 |
| CLUB WYNDHAM Gold | $0 |
| CLUB WYNDHAM Platinum | $0 |

No. 2692/Rev. 7-16

# Enrollment Agreement Terms and Conditions

**RCI Exchange**

RCI and Wyndham Vacation Resorts are both subsidiaries of Wyndham Worldwide Corporation, but operate as independent companies.

Wyndham Vacation Resorts will enroll and pay your initial annual RCI membership fee. Renewal fees are part of annual CLUB WYNDHAM Plus Assessment. Confirming a reservation through RCI requires an exchange fee, which is listed in the RCI Disclosure Guide and is subject to change.

**Perks by CLUB WYNDHAM Membership**

Perks by CLUB WYNDHAM provides various travel-related benefits and privileges to its Members. You become a Member of Perks by CLUB WYNDHAM by submitting this Perks by CLUB WYNDHAM Membership Agreement (*"Agreement"*) and by payment of applicable membership fees. This Agreement, and a Perks by CLUB WYNDHAM representative, forms a legally binding contract between Member and Wyndham Vacation Resorts, Inc. (*"Sponsor"*), subject to the following terms and conditions:

1. **Membership.**  Membership in Perks by CLUB WYNDHAM is available to individuals and their immediate families only. Membership in Perks by CLUB WYNDHAM is non-transferable and may not be sold.

2. **Perks by CLUB WYNDHAM Programs and Benefits.**  Programs and benefits offered to Perks by CLUB WYNDHAM Members are described and depicted in the Member's kit, a copy of which has been provided to Member along with this Membership Agreement. Their programs and benefits are subject to separate terms and conditions of suppliers of these benefits and are subject to change at any time. Perks by CLUB WYNDHAM benefits may be changed or eliminated without prior notice to Members. Sponsor accepts no responsibility for acts or omissions of any persons providing such programs or benefits directly to Members. There may be certain additional costs, fees and expenses associated with certain Perks by CLUB WYNDHAM programs or benefits currently available or added by Sponsor from time to time and such additional costs, if any, shall be borne solely by Member. Any fees required are disclosed in the materials for the specific benefit.

3. **Personal Expenses.**  Member is responsible for payment of any personal expenses incurred while utilizing any Perks by CLUB WYNDHAM program or benefit. Use of or participation in Perks by CLUB WYNDHAM is completely voluntary, and payment of any fee or other cost associated with Perks by CLUB WYNDHAM is required only upon that use or participation.

4. **Membership Suspension and Termination.**  This Agreement, together with Member status, may be suspended or terminated by Sponsor without further obligation if Member fails to comply with these terms and conditions or the terms of the various programs and benefits of Perks by CLUB WYNDHAM or if the Member becomes delinquent on any amounts owed to Sponsor and/or its affiliates. Further, Membership may be terminated for any misuse of the Perks by CLUB WYNDHAM program, violation of any federal, state or local law or regulation in connection with use, failure to pay for charges associated with a Perks by CLUB WYNDHAM program or benefit or for any other reason. Membership in Perks by CLUB WYNDHAM will automatically terminate if Member is no longer a CLUB WYNDHAM Plus Owner.

5. **Program Changes.**  Terms and conditions of this Agreement and of Perks by CLUB WYNDHAM programs and benefits may be changed from time to time at sole discretion of Sponsor. **Sponsor reserves its right to increase the annual fee or future fees from time to time.** Members shall be notified of any information regarding such changes in Perks by CLUB WYNDHAM from publications or by written correspondence. Current editions of these publications supersede prior editions with respect to terms and conditions of membership and Perks by CLUB WYNDHAM programs and benefits. Sponsor is bound only by representations that it makes concerning terms and conditions of its programs and benefits set forth in its official publications or written correspondence and is not responsible for contrary or conflicting representations made by any other person.

No. 2692/Rev. 7-16

**6. Limitation of Liability and Release.** Sponsor, its subsidiaries, officers, directors, employees and agents, including without limitation, its advertising agencies, printers and other suppliers, shall not be liable for and expressly disclaim any and all liability for any injury, liability, expense, cost, damage, penalty or loss of any kind incurred or caused by a Member, their family, or their guests (i) in connection with the utilization of or participation in any Perks by CLUB WYNDHAM program or benefit, or (ii) resulting from any acts or omissions of any individual or entity providing a product, benefit or service in Perks by CLUB WYNDHAM program. Sponsor's liability for any other loss or damage incurred by a Member through use of the Perks by CLUB WYNDHAM programs or benefits is limited to membership fees paid by such Member. Member hereby agrees to release and hold harmless Sponsor, its subsidiaries, successors and assigns, its and their advertising agencies, printers and other suppliers, as well as its officers, directors, employees and agents for any injury, liability, expense, cost, damage, penalty or loss of any kind incurred by Member, the Member's family or guest during any trip or utilization of any Perks by CLUB WYNDHAM program or benefit and for any related damage, theft or loss caused or incurred by the Member, the Member's family or guest.

**7. Effective Date and Activation.** This Agreement is effective when Member and the Sponsor of Perks by CLUB WYNDHAM Representative sign the Ownership Review Form. Member must activate Perks by CLUB WYNDHAM Membership as indicated on the Perks by CLUB WYNDHAM Savings Card before commencing use. If Member delays activation of the Perks by CLUB WYNDHAM Savings Card, the period of time between the effective date and the activation date shall be lost.

**8. Effect of Termination.** Termination of Membership in Perks by CLUB WYNDHAM will have no effect on such Member's vacation ownership contractual obligations or agreements and will not result in termination of an ownership interest which a Member may have in real estate, including but not limited to a timeshare, lot, home, condominium, townhouse or undivided interest. Membership in Perks by CLUB WYNDHAM is not additional consideration for the purchase of a vacation ownership interest. Cancellation of Membership in Perks by CLUB WYNDHAM shall in no way relieve a Member of their obligation under any other contract or agreement.

**9. Availability of Programs and Benefits.** As Perks by CLUB WYNDHAM depends on services and programs offered by unrelated third party suppliers, Sponsor cannot guarantee continued availability of all programs and benefits. If a Perks by CLUB WYNDHAM program or benefit becomes unavailable for any reason whatsoever, Member waives any and all claims against Sponsor resulting from unavailability of such program or benefit.

**10. Miscellaneous Disclosures.** Continued availability of Perks by CLUB WYNDHAM is not necessary for use and enjoyment of any accommodation within Member's timeshare plan. No costs of acquisition, operation, maintenance, or repair of Perks by CLUB WYNDHAM are passed on to purchasers of a vacation ownership interest in a timeshare plan as a common expense.

No. 2692/Rev. 7-16

# Incentive Acknowledgment Disclosure

## CLUB WYNDHAM®PLUS BONUS POINTS
### Wyndham Vacation Resorts, Inc.

By purchasing a timeshare interest through Wyndham Vacation Resorts, Inc. (*"Wyndham"*), Buyer has the option to select:

CLUB WYNDHAM® PLUS BONUS POINTS

**BONUS POINTS:**

Buyer will receive 116,000 CLUB WYNDHAM Plus Bonus Points (*"Bonus Points"*).

Bonus Points Use Period:  Start Date: **04-01-2018**
End Date: **03-31-2020**

Buyer will also be eligible for CLUB WYNDHAM Plus VIP status through Bonus Points End Date: Yes____ No____

## Terms and Conditions

GENERAL:

1. Buyer may receive temporary CLUB WYNDHAM Plus VIP status depending upon the number of Bonus Points awarded combined with the number of points purchased. CLUB WYNDHAM Plus VIP status will remain in effect through the Bonus Points Use Period End Date, if applicable.

2. If Buyer cancels the timeshare purchase contract during the applicable cancellation period, the right to receive Bonus Points or the Bonus Play Vacation Package will be automatically cancelled without notice, penalty or obligation.

3. This benefit is not assignable or otherwise transferable by the Buyer.

4. Individuals should not purchase a vacation ownership interest in reliance upon the continued availability of this benefit. If all or a portion of the benefit described in the statement becomes unavailable as the result of events beyond the control of the Developer, the offering of such benefit may be terminated.

5. Buyer should not rely upon any representations other than those contained in this document, in the CLUB WYNDHAM Plus Program Guidelines, and the Bonus Play Vacation Package Terms and Conditions.

6. Wyndham Vacation Resorts, Inc., 6277 Sea Harbor Drive, Orlando, Florida 32821.

BONUS POINTS:

1. Bonus Points will be automatically awarded to the Buyer unless otherwise selected.

2. The Buyer's CLUB WYNDHAM Plus Membership must be in good standing in order to use Bonus Points.

3. Bonus Points entitle Buyer to reserve accommodations through the CLUB WYNDHAM Plus program between the Bonus Points Use Period Start Date and End Date. Reservations utilizing Bonus Points may not result in check-in occurring prior to the Use Period Start Date. Bonus Points cannot be renewed or extended beyond the Use Period End Date.

4. Bonus Points are subject to the terms and conditions of the CLUB WYNDHAM Plus Program Guidelines located in the CLUB WYNDHAM Plus Member's Directory (*"Directory"*). Buyer will also receive Housekeeping Credits and Reservation Transactions as described in the Directory. Bonus Points cannot be used for Advance Reservation Priority reservations.

No. 3073/Rev. 6-17

# Credit Authorization/Owner Information

I/We authorize Wyndham Vacation Ownership, Inc., its parent, subsidiaries, affiliates, and their service providers (collectively "WVO") to obtain credit reports, credit scores, and other credit history and financial information regarding me/us from multiple sources, including credit reporting agencies, creditors and financial institutions (collectively "Credit Information"). WVO may use Credit Information: to evaluate my/our eligibility for credit; for collections related to my vacation ownership, membership, homeowner association and similar obligations; to identify and market products and services that may be of interest to me/us; for WVO's ownership, membership and association portfolio analysis and management; and, for such other uses as permitted or required by law. WVO may share my Credit Information with third parties who may offer credit in connection with my/our purchase of products or services from or through WVO. Any reproduction of this Purchaser Information and Credit Authorization made by reliable means, including photocopy and facsimile, shall be considered as valid as the original. This authorization shall remain in effect during my ownership or use of a WVO product or service.

Applicant Initials: _____                          Applicant Initials: _____

_RH_ I authorize WVO to obtain my Credit Information.          _____ I authorize WVO to obtain my Credit Information.

_____ I DO NOT authorize WVO to obtain my Credit Information.     _____ I DO NOT authorize WVO to obtain my Credit Information.

| PRIMARY | SECONDARY |
|---|---|
| To be completed by Applicant/Purchaser | To be completed by Applicant/Purchaser |
| Name: **Rosetta Hutter** (include Jr. or Sr. if applicable) | Name: _____ (include Jr. or Sr. if applicable) |
| Maiden Name (if applicable): _____ | Maiden Name (if applicable): _____ |
| Marital Status: **Single** | Marital Status: _____ |
| Spouse's Name (if not purchasing) _____ | Spouse's Name (if not purchasing) _____ |
| Social Security Number: **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**   Date of Birth: **7-18-1964** | Social Security Number: _____  Date of Birth: _____ |
| Present Address: **16707 E. 36th Terr S.** (Street) | Present Address: _____ (Street) |
| **Independence MO 64055** (City, State and ZIP) | _____ (City, State and ZIP) |
| _____ (Home Phone, including area code)  **816-500-4523** (Cell Phone, including area code) | _____ (Home Phone, including area code)  _____ (Cell Phone, including area code) |
| Email Address: **Tommiehutter@sbcglobal.net** | Email Address: _____ |
| †Total Annual Income: $ **66,000** Please include all of your sources of income, including income from assets that you would like considered as a basis for repaying this obligation. †Alimony, child support, or separate maintenance income need not be revealed if you do not wish it to be considered as a basis for repaying this obligation. | †Total Annual Income: $ _____ Please include all of your sources of income, including income from assets that you would like considered as a basis for repaying this obligation. †Alimony, child support, or separate maintenance income need not be revealed if you do not wish it to be considered as a basis for repaying this obligation. |
| Do you (Circle One): Own/Rent, if Rent, what is your monthly rent? $ **870.00** | Do you (Circle One): Own, Rent, if Rent, what is your monthly rent? $ _____ |
| Former Address (if residing less than six months at present address): **N/A** (Street) | Former Address (if residing less than six months at present address): _____ (Street) |
| _____ (City, State and ZIP) | _____ (City, State and ZIP) |
| Employer: **Fort Osage RRI** (Name) | Employer: _____ (Name) |
| **2101 N. Twyman** (Street) | _____ (Street) |
| **Independence MO 64058** (City, State and ZIP) | _____ (City, State and ZIP) |
| **816-650-7156** (Phone, including area code) | _____ (Phone, including area code) |
| Closest relative not living with you: **Tammie Caley** (Name) | Closest relative not living with you: _____ (Name) |
| _____ (Street) | _____ (Street) |
| _____ (City, State and ZIP) | _____ (City, State and ZIP) |
| **620-264-0741** (Phone, including area code) | _____ (Phone, including area code) |

I/We hereby certify that all information provided for purposes of obtaining my/our information is true and correct.

Signature _____                  Signature _____
Print name: **Rosetta Hutter**              Print name: _____
(Legal name as appears on valid identification)   (Legal name as appears on valid identification)

Date **11/11/17**                          Date _____

FOR OFFICE USE ONLY

CRS Account Number: **43786513**      Contract Number: _____

Corrected/VOID

No. 2313/Rev. 9-17

5000



# CLUB WYNDHAM®

#120,000
CWA

## Acknowledgment of Application for and Use of a PayPal Credit Account

**Please place initials next to each item below:**

*RH* — I understand that I have applied for, and agreed to utilize, a **PayPal Credit Open-end Credit Plan** ("PayPal Credit Account") for the payment of a portion or all of the down payment required for my Wyndham Vacation Resorts, Inc. ("WVR") purchase.

*RH* — I understand I will have No Payments plus No Interest if paid in full in 6 months for this transaction on my **PayPal Credit Account** and I received the promotional financing disclosure document.

*RH* — I acknowledge that if I don't pay off this transaction within the 6 months timeframe, I will be charged interest at an Annual Percentage (APR) of 19.99% starting from the date of the transaction.

*RH* — I acknowledge that I have received the **Terms and Conditions of the PayPal Credit Payment System** document and I understand and agree to all the terms contained in that document.

*RH* — I understand that my **PayPal Credit Account** is an open-end credit plan issued by **Comenity Capital Bank**, that neither **Bill Me Later, Inc.** (Servicer for your PayPal Credit Account) nor Comenity Capital Bank is affiliated with WVR and its timeshare product, and that Comenity Capital Bank (not WVR) and is solely responsible for servicing my PayPal Credit Account.

*RH* — I also understand that neither Bill Me Later, Inc. nor **Comenity Capital Bank** is responsible for the acts, agreements, or obligations of WVR, including the operation of the timeshare program and the condition of any accommodations available through the timeshare plan.

*RH* — I understand and agree that WVR will share the following personal information on my behalf with Bill Me Later, Inc. and Comenity Capital Bank for the purpose of my application for and use of my PayPal Credit Account:

- My name, address and telephone number
- My email address
- My date of birth and my Social Security number
- The amount of the transaction to be charged to my PayPal Credit Account

Applicant

_____     Rosetta Hutter    11/11/17
**Signature**                **Print Name**                     **Date**

Tommmie.hutter@sbcglobal.com
**Email Address:**

(For Office Use Only)
Tour Reference Number: 43786513        Contract Number: _____

Application submitted by WVR representative:

_____    Wes Keesler    11-11-17
**Signature**                **Print Name**        **Date**

No. 2354-NP/Rev.05-17



*DEC*

## Wyndham Rewards® Visa® Card Data Collection for Application document

CSR # 4378651 3      WVO Contract # _____

Required Information

First Name: Rosetta      MI: R      Last Name: Hutter

Street Address (no PO boxes please): 16707 E. 38th Terr.      Apt. Number: _____
This offer is available only to applicants who are residents of the United States, with the exception of Puerto Rico and the other territories.

City: Independence      State: MO      Zip: 64055      Years There/Months: 15 years

Home Phone††: (816) 500 - 4523      Email Address: tommiehutter @ sbcglobal.net

Social Security Number: 248 - 45 - 0011      Date of Birth (MM/DD/YY): 7/15/64      Mother's Maiden Name: Van Meter

Do you: ☐ Rent   ☒ Own   ☐ Other

☐ Check here if you are a married resident of Wisconsin.

Total Annual Income†: $ 120,000
†Alimony, child support, or separate maintenance income need not be revealed if you do not wish it to be considered as a basis for repaying this obligation.
Please include all of your sources of income, including income from assets, that you would like considered as a basis for repaying this obligation. Income information will only be used to evaluate your eligibility for this program, and will not be used for any other purpose.

Country of Citizenship: ☒ United States of America      ☐ Other  _Please include full name of country_

Type of Employment: ☐ Government   ☐ Homemaker   ☒ Professional   ☐ Self-Employed   ☐ Service/Retail
                     ☐ Skilled Trade   ☐ Student   ☐ Unemployed   ☐ Other

Employer Name: Fort Osage RRI

Work Phone††: (816) 650 - 7151      Do you have a Checking Account? ☐ No ☒ Yes      Do you have a Savings Account? ☐ No ☒ Yes

Wyndham Rewards Information

Are you a Wyndham Rewards Member? ☒ No   ☐ Yes      Wyndham Rewards Member Number: _____

Your Wyndham Rewards Member Number is for the primary applicant only. If you don't know your Wyndham Rewards Member Number we can perform a quick search for it before assigning a new number in the event one cannot be found. If you're not currently a member of Wyndham Rewards, we will enroll you and a number will be assigned.

†† Please see Terms and Conditions for details.
The Wyndham Rewards® Visa® Card is issued by Barclaycard pursuant to a license by Visa USA Incorporated. Visa is a registered trademark of Visa USA Incorporated.
©2017 Barclays Bank Delaware (Barclaycard), Member FDIC

29-2284-EVT  07/17

# WYNDHAM

## Quality Assurance Review

| | |
|---|---|
| Name(s): **Rosetta A Hutter** | Contract #:**00020-1741121** |
| Address: **16707 E 35th Terr S** | Member #:**00203423356** |
| **Independence, MO 64055 USA** | Date:**11-11-2017** |
| Phone Number: **(816) 650-7116** | Email Address: |

Inventory Name: **CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN**

Bonus Points: **116,000**

End Date of Bonus Points **03-31-2020**

## New Purchase Financial Details

| | | |
|---|---|---|
| Gross Purchase Price: | $ | **21,200.00** |
| Discount: | $ | **6,700.00** |
| Net Purchase Price: | $ | **14,500.00** |
| Closing Cost: | $ | **30.00** |
| Processing Fee: | $ | **349.00** |
| Total Purchase Price: | $ | **14,849.00** |
| Down Payment Today: | $ | **4,843.11** |
| Amount Financed: | $ | **10,035.89** |
| Term: | | **120** |
| Interest Rate: | | **16.99**% |

Interest Free option if you pay the loan balance of $ **10,035.89** within 30 days of the date listed on your contract. See 30 Days Interest Free Certificate for additional details.

## Club Wyndham Plus Maintenance Dues

| | | |
|---|---|---|
| Total Points - Today's Contract | | **84,000** |
| Points Based Assessment | | |
| Club Wyndham Plus Program Fee | $ | **12.25** |
| HOA Fee and Real Estate Taxes | $ | **39.20** |
| **Total Assessment Amount** | $ | **51.45** |
| Frequency | | **Monthly** |

Auto Pay **Yes**

First Payment Date **12-26-2017**

I have reviewed and agree with the information noted above.

| | | | |
|---|---|---|---|
| Owner's Signature: Rosetta A Hutter | Date | Owner's Signature: | Date |
| Owner's Signature: | Date | Owner's Signature: | Date |

Wyndham Vacation Resorts, Inc.

By:_____
Authorized Representative of Seller

No. 2918B/Rev. 7-16

Wyndham Vacation Resorts, Inc.
6277 Sea Harbor Dr.
Orlando, FL 32821

# Closing Disclosure

This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| Date Issued | 11-11-2017 | Borrower | ROSETTA A HUTTER | Loan Term | 10 years |
| Closing Date | 11-11-2017 | | 16707 E 35TH TERR S | Purpose | Purchase |
| Disbursement Date | 11-16-2017 | | INDEPENDENCE, MO 64055 USA | Product | Adjustable Rate |
| Settlement Agent | WYNDHAM VACATION RESORTS, INC. | | | Loan Type | ☒ Conventional ☐ FHA |
| File # | | Seller | WYNDHAM VACATION RESORTS, INC. | | ☐ VA ☐ ____ |
| Property | 6277 SEA HARBOR DR. | | 6277 SEA HARBOR DR. | Loan ID # | 00020-1741121 |
| | ORLANDO, FL 32821 | | ORLANDO, FL 32821 | MIC # | |
| Sales Price | $14,500.00 | Lender | WYNDHAM VACATION RESORTS, INC. | | |
| | | | 6277 SEA HARBOR DR. | | |
| | | | ORLANDO, FL 32821 | | |

| Loan Terms | | Can this amount increase after closing? |
|---|---|---|
| Loan Amount | $10,035.89 | No |
| Interest Rate | 16.99% | Yes, It can increase by one half percent (1/2%) upon your discontinuance of the approved Auto Pay Plan. The maximum interest rate increase of one half percent (1/2%) will not increase above 17.49%. |
| Monthly Principal & Interest *See Projected Payments below for your Estimated Total Monthly Payment* | $175.57 | Yes, it can increase upon your discontinuance of the approved Auto Pay Plan. The maximum monthly amount will not increase above $178.82. |
| | | **Does the loan have these features?** |
| Prepayment Penalty | | No |
| Balloon Payment | | No |

| Projected Payments | |
|---|---|
| Payment Calculation | 10 years |
| Principal & Interest | $175.57 |
| Mortgage Insurance | |
| Estimated Escrow *Amount can increase over time* | |
| Estimated Total Monthly Payment | $175.57 |

| Estimated Taxes, Insurance & Assessments *Amount can increase over time* *See page 4 for details* | $39.20 a month | This estimate includes | In escrow? |
|---|---|---|---|
| | | ☒ Property Taxes | No |
| | | ☒ Homeowner's Insurance | No |
| | | ☒ Other: Annual Maintenance Fee / Annual Dues | No |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

| Costs at Closing | | |
|---|---|---|
| Closing Costs | $30.00 | Includes $0.00 in Loan Costs + $30.00 in Other Costs − $0.00 in Lender Credits. See page 2 for details. |
| Cash to Close | $4,843.11 | Includes Closing Costs. See Calculating Cash to Close on page 3 for details. |

CLOSING DISCLOSURE

PAGE 1 OF 5 · LOAN ID # 00020-1741121

Case 6:20-cv-03296-MDH Document 1-1 Filed 09/24/20 Page 51 of 68

## Closing Cost Details

| Loan Costs | Borrower-Paid | | Seller-Paid | | Paid By Others |
|---|---|---|---|---|---|
| | At Closing | Before Closing | At Closing | Before Closing | |
| **A. Origination Charges** | | | | | |
| 01. % of Loan Amount (Points) | | | | | |
| 02. | | | | | |
| 03. | | | | | |
| 04. | | | | | |
| 05. | | | | | |
| 06. | | | | | |
| 07. | | | | | |
| 08. | | | | | |
| **B. Services Borrower Did Not Shop For** | | | | | |
| 01. | | | | | |
| 02. | | | | | |
| 03. | | | | | |
| 04. | | | | | |
| 05. | | | | | |
| 06. | | | | | |
| 07. | | | | | |
| 08. | | | | | |
| 09. | | | | | |
| 10. | | | | | |
| **C. Services Borrower Did Shop For** | | | | | |
| 01. | | | | | |
| 02. | | | | | |
| 03. | | | | | |
| 04. | | | | | |
| 05. | | | | | |
| 06. | | | | | |
| 07. | | | | | |
| 08. | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | | | | |
| Loan Costs Subtotals (A + B + C) | | | | | |

| Other Costs | Borrower-Paid | | Seller-Paid | | Paid By Others |
|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | | | |
| 01. Recording Fees    Deed $ 0.00    Mortgage $ 0.00    Release $ 0.00 | $0.00 | | | | |
| 02. State tax/Stamps  Deed $ 0.00    Mortgage $ 0.00 | $0.00 | | | | |
| 03. Excise tax $ | | | | | |
| 04. Intangible tax $  0.00 | $0.00 | | | | |
| **F. Prepaids** | | | | | |
| 01. Homeowner's Insurance Premium (  mo.) | | | | | |
| 02. Mortgage Insurance Premium (   mo.) | | | | | |
| 03. Prepaid Interest (   per day from    to   ) | | | | | |
| 04. Property Taxes (   mo.) | | | | | |
| 05. | | | | | |
| **G. Initial Escrow Payment at Closing** | | | | | |
| 01. Homeowner's Insurance    per month for   mo. | | | | | |
| 02. Mortgage Insurance    per month for   mo. | | | | | |
| 03. Property Taxes    per month for   mo. | | | | | |
| 04. | | | | | |
| 05. | | | | | |
| 06. Aggregate Adjustment | | | | | |
| **H. Other** | | | | | |
| 01. Closing Fee (Paid to First American Title) | $30.00 | | | | |
| 02. | | | | | |
| 03. Government Surcharge (Paid to Title Insurer) | | | | | |
| 04. Owner's Title Policy (Optional) | $0.00 | | | | |
| 05. Settlement Fee | $0.00 | | | | |
| **TOTAL OTHER COSTS (Borrower-Paid)** | $30.00 | | | | |
| Other Costs Subtotals (E + F + G + H) | $30.00 | | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | $30.00 | | | | |
| Closing Costs Subtotals (D + I) | $30.00 | | | | |
| Lender Credits | | | | | |

Case 6:20-cv-03296-MDH   Document 1-1   Filed 09/24/20   Page 52 of 68

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $0.00 | $30.00 | Yes, see Total Closing Cost in Section J |
| Closing Costs Paid Before Closing | $0.00 | $0.00 | No |
| Closing Costs Financed (Paid from Your Loan Amount) | $0.00 | $0.00 | No |
| Down Payment/Funds from Borrower | $0.00 | $4,813.11 | Yes, see Cash To Close |
| Deposit | $0.00 | $0.00 | No |
| Funds for Borrower | $0.00 | $0.00 | No |
| Seller Credit | $0.00 | $0.00 | No |
| Adjustments and Other Credits | $0.00 | $0.00 | No |
| Cash to Close | $0.00 | $4,843.11 | No |

## Summaries of Transactions

Use this table to see a summary of your transaction.

**BORROWER'S TRANSACTION**

| K. Due from Borrower at Closing | $14,879.00 |
|---|---|
| 1. Sale Price of Property | $14,500.00 |
| 2. Sale Price of Any Personal Property Included in Sale | |
| 3. Closing Costs Paid at Closing (J) | $30.00 |
| 04 | |
| **Adjustments** | |
| 05. Processing Fee | $349.00 |
| 06 | |
| 07 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 8. City/Town Taxes to | |
| 9. County Taxes to | |
| 10. Assessments to | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $(10,035.89) |
|---|---|
| 1. Deposit | |
| 2. Loan Amount | $10,035.89 |
| 3. Existing Loan(s) Assumed or Taken Subject to | |
| 04 | |
| 05 Seller Credit | |
| **Other Credits** | |
| 06. Traded Equity | $0.00 |
| 07 | |
| **Adjustments** | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| **Adjustments for Items Unpaid by Seller** | |
| 12. City/Town Taxes to | |
| 13. County Taxes to | |
| 14. Assessments to | |
| 16 | |
| 17 | |

| CALCULATION | |
|---|---|
| Total Due from Borrower at Closing (K) | $14,879.00 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | $(10,035.89) |
| Cash to Close ☒ From ☐ To Borrower | $4,843.11 |

**SELLER'S TRANSACTION**

| M. Due to Seller at Closing | $14,849.00 |
|---|---|
| 1. Sale Price of Property | $14,500.00 |
| 2. Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05. Processing Fee | $349.00 |
| 06 | |
| 07 | |
| 08 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 9. City/Town Taxes to | |
| 10. County Taxes to | |
| 11. Assessments to | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | |
|---|---|
| 1. Excess Deposit | |
| 2. Closing Costs Paid at Closing (J) | |
| 3. Existing Loan(s) Assumed or Taken Subject to | |
| 4. Payoff of First Mortgage Loan | |
| 5. Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14. City/Town Taxes to | |
| 15. County Taxes to | |
| 16. Assessments to | |
| 17 | |
| 18 | |
| 19 | |

| CALCULATION | |
|---|---|
| Total Due to Seller at Closing (M) | $14,849.00 |
| Total Due from Seller at Closing (N) | |
| Cash ☐ From ☒ To Seller | $4,813.11 |

# Additional Information About This Loan

## Loan Disclosures

### Assumption
If you sell or transfer this property to another person, your lender
- ☐ will allow, under certain conditions, this person to assume this loan on the original terms.
- ☒ will not allow assumption of this loan on the original terms.

### Demand Feature
Your loan
- ☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
- ☒ does not have a demand feature.

### Late Payment
If your payment is more than 10 days late, your lender will charge a late fee of $10.00 or 1% of the amount that is late, whichever is greater.

### Negative Amortization (Increase in Loan Amount)
Under your loan terms, you
- ☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- ☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- ☒ do not have a negative amortization feature.

### Partial Payments
Your lender
- ☒ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
- ☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
- ☐ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest
You are granting a security interest in CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN, located at 6277 Sea Harbor Dr. Orlando, FL 32821.

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account
For now, your loan
- ☐ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | |
|---|---|
| Escrowed Property Costs over Year 1 | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs over Year 1 | Estimated total amount over year 1 for your non-escrowed property costs. You may have other property costs. |
| Initial Escrow Payment | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | The amount included in your total monthly payment. |

- ☒ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | $470.40 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

### In the future,
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Loan Calculations

| | |
|---|---|
| Total of Payments. Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $21,068.40 |
| Finance Charge. The dollar amount the loan will cost you. | $11,032.51 |
| Amount Financed. The loan amount available after paying your upfront finance charge. | $10,035.89 |
| Annual Percentage Rate (APR). Your costs over the loan term expressed as a rate. This is not your interest rate. | 16.990% |
| Total Interest Percentage (TIP). The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 109.93% |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at www.consumerfinance.gov/mortgage-closing

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
  • what happens if you fail to make your payments,
  • what is a default on the loan,
  • situations in which your lender can require early repayment of the loan, and
  • the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☐ state law does not protect you from liability for the unpaid balance.

**Loan Acceptance**
You do not have to accept this loan because you have received this form or signed a loan application.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| Name | WYNDHAM VACATION RESORTS, INC. | | | | WYNDHAM VACATION RESORTS, INC. |
| Address | 6277 SEA HARBOR DR. ORLANDO, FL 32821 | | | | 6277 SEA HARBOR DR. ORLANDO, FL 32821 |
| NMLS ID | | | | | |
| License ID | | | | | |
| Contact | | | | | |
| Contact NMLS ID | | | | | |
| Contact License ID | | | | | |
| Email | | | | | |
| Phone | (800) 251-8736 | | | | (800) 251-8736 |



# WYNDHAM
## CONGRATULATIONS!

Date: 11-11-2017                                    Contract #: 00020-1741121

Owner Name(s)          Rosetta A Hutter Single Woman

Wyndham Representative:    Cordero Estanislao Barba

At Wyndham, we continually strive to improve our product and customer experience. Owner feedback is one of our most valuable tools to identify areas for improvement and growth. Additional comments are also appreciated. Thank you in advance for your valuable contribution.

**Benefits Relating To Our Decision To Purchase With Wyndham Vacation Ownership Today**

1. _Vacatn  Afte  Retive_
2. _10 Down  Pymt.   used  with  finance_
3. _____

**Future Vacation Plans**

_N/A_

_____

_____

_____

Additional Comments: _Guagou was nice & friendly_
_Took longer then what was originally Told_

_____

Thank you for sharing your experience today. We look forward to helping you and your family plan many fun-filled and memorable vacations with us, and to providing you with our signature Count on Me! service every time.

No. WVO 0005A/Rev. 7-16

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

PLAINTIFF'S
EXHIBIT
B

ROSETTA T. HUTTER )
)
    Plaintiff, )
)
v. )    Case No. 6:19-CV-03139-MDH
)
WYDNHAM VACATION RESORTS, Inc. )
)
    Defendant. )

## ORDER

    Before the Court is Defendant's Motion to Dismiss or Stay Proceedings and Compel

Arbitration. (Doc. 6). Defendant requests that the Court order the claims of Plaintiff to be submitted

to binding arbitration pursuant to the arbitration clause of their contracts and for the case to be

dismissed. For the reasons stated below, the Court will grant Defendant's Motion.

### Background

    Plaintiff entered into a timeshare contract with Defendant, who operates a timeshare resort

business. The contract was entered into on November 11, 2017, in Taney County, Missouri.

Plaintiff has sued Defendant for fraud, negligence, negligent misrepresentation, and for violations

of the Missouri Merchandising Practices Act. Plaintiff essentially alleges that Defendant tricked

her into signing the contract through the use of negligent and intentional misrepresentations, high-

pressure sales tactics, coercion, and other unfair practices.

    The contract contained the following provisions:

Definition of Disputes. Any Disputes between the Parties shell be resolved as
follows: The Parties agree that any dispute, claim, suit, demand or controversy
arising out of or relating to this Agreement (any dispute) shall be determined
exclusively and finally by individual arbitration, except es specified below.
"Dispute" includes, without limitation, any claim regarding any breach,
termination. enforcement, interpretation or validity of the Agreement, any claim

1

arising out of or related to the marketing, purchase, and/or use of the Owner's Ownership, Owner's use of Sellers properties, and/or Owner's participation in any activities/events sponsored, organized, or made available by Seller or any of its affiliates. . . .

Applicable Rules/Location. his [sic] arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration shall be administered by the AAA under its Consumer Arbitration Rules . . . The arbitration shall be held in the County of Orange, State of Florida unless the Parties agree to another location in writing, or the arbitrator decides to hold a telephonic hearing to reach a decision based solely on the Parties' submission of documents, or to designate another location reasonably convenient for the Parties. In the event of any conflict between the AAA Rules and this agreement, the provisions of this agreements shall be controlling. . .

Stay of Proceedings. In the event that a Dispute involves both issues that are subject to arbitration and issues that are not subject to arbitration, the Parties unequivocally agree that any legal proceeding regarding the issues not subject to arbitration shall be stayed pending resolution of the issues subject to arbitration, except for any proceedings described in Paragraph 32(c) above, which actions shall proceed without a stay. . .

Final and Binding. The arbitration award shall be final and binding on the Parties. . . .

Notice and Good Faith Negotiation. Any Party intending to file an arbitration demand against the other Party must notify the other party at least thirty (30) days before filing. The Parties agree to attempt to negotiate a mutually agreeable resolution to resolve any such dispute or claim during this period. If a party filing an arbitration demand fails to provide that notice, the other Party is entitled to seek a stay of the arbitration proceeding from the AAA for (30) days and to participate in settlement negotiations during that period in good faith. . . .

Limitation of liability. Owner expressly agrees that in no event shall seller . . . be liable to owner for . . . punitive or enhanced damages arising out of or relating to. And/or in connection with the marketing process. Sales process. Purchase of the ownership, use of the ownership and/or any breach of this agreement.

Defendant claims that the "Definition of Disputes" clause is inclusive of every claim in Plaintiff's petition and that the petition must be submitted to binding arbitration and thereafter dismissed.

### Discussion

2

## A. Federal Arbitration Act

The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms. *Lamps Plus, Inc. v. Varela*, 587 U.S. ___, (2019) (slip op., at 1); *see* 9 U.S.C. § 2. Congress intended for the scope of the FAA to reach the full extent of its constitutional powers under the Commerce Clause. *Allied-Bruce Terminix Co., Inc. vs. Dobson*, 513 U.S. 265, 277 (1995). As such, the FAA extends not only to contracts "within the flow of interstate commerce" but to any transaction that, in general practice, affects interstate commerce in a substantial way. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (per curiam) (internal citations omitted). The Court finds that because the timeshare contracts enabled Plaintiff to travel to any number of resort properties outside of Missouri, and also enabled out-of-state timeshare owners to travel to Plaintiff's properties in Missouri, they both substantially affect interstate commerce and fall within its flow. Accordingly, the Court will enforce the contract's arbitration provisions according to the FAA. When a court interprets provisions in an agreement covered by the FAA, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

Before applying the FAA, the Court must make a limited inquiry into whether a valid arbitration agreement exists between the parties. *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994). The Court observes that the contract contains an arbitration clause. Yet if the agreement to arbitrate was induced by fraud, as Plaintiff alleges, it is invalid and cannot be arbitrated. *Id.* The Supreme Court has distinguished between fraud relating to the entire contract and fraud relating to an arbitration clause specifically. *Id.* (citing *Prima Paint Corp. v. Flood &*

3

*Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); see also *Ass'd Elec. Co-op., Inc. v. Int'l Bhd. Of Elec. Workers, Local No. 53*, 751 F.3d 898, 905 (9th Cir. 2014). If the claim of fraud goes to the validity of the entire contract, the issue is properly left to arbitration. *Id.* If, however, the claim of fraud goes solely to the presence of an arbitration clause, the claim is not arbitrable and must be resolved by the trial court. *Id.* In this case, Plaintiff's claims that she was deceived or otherwise defrauded go to the validity of the entire contract, not to the arbitration clause in particular. Thus, the issue of Defendant's deception, which underlies each claim, is arbitrable so long as the dispute falls within the contracts' arbitration provisions.

### A. Application

Plaintiff claims that Defendants essentially tricked her into entering into timeshare contracts by making false claims about the terms of the contracts during high-pressure marketing presentations. Specifically, she alleges that Defendant's agents lied to her about the portability and potential uses of her timeshare purchase and her accumulated timeshare points. As a matter of contract interpretation, the Court finds that these claims "arise out of" the timeshare contracts and are "related to the marketing, purchase, and/or use of" the timeshare properties. Plaintiff's claims thus fall within the plain language of the arbitration clauses.

Nonetheless, Plaintiff proffers five reasons why the arbitration clause is unenforceable: (1) the arbitration clause lacks mutuality of obligation and is thus unconscionable; (2) the clause waiving punitive damages is unconscionably unfair and unenforceable; (3) the selection of the state of the Florida as the arbitration venue is unconscionably unfair and unenforceable; (4) the arbitration clause is unenforceable because it amounts to a waiver of her constitutional right to a jury trial; and (5) Defendant breached the contract by not engaging in good-faith negotiations prior to filing an arbitration demand.

4

## 1. Unconscionable for Lack of Mutuality of Obligation

Plaintiff asserts the arbitration clause lacks a mutuality of obligation and is thus unconscionable. In order for a contract to be valid, its terms must not be substantively or procedurally unconscionable. *State ex rel. Vincent v Schneider*, 194 S.W.3d 853, 858 (Mo. 2006). Plaintiff claims the arbitration clause is unconscionable because it places obligation on her and none on Defendant. After careful review of the contract, the Court disagrees. Under the arbitration clause, both parties could be required to submit their disputes to arbitration. ("The Parties agree that any dispute . . . arising out of or relating to this Agreement . . . shall be determined exclusively and finally by individual arbitration[.]"). Thus, the parties, in agreeing to the arbitration provision, were making mutual promises to each other about how their disputes arising from the contract would be resolved, regardless of who was initiating the dispute. Because there was a mutuality of obligation as to the arbitration clause, the Court does not consider the terms unconscionable on this basis.

## 2. Unconscionable for Waiver of Punitive Damages

Plaintiff claims the arbitration clause is unconscionable because it waives punitive damages. The Court notes it is well-settled that the FAA allows parties to waive punitive damages. *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 801 (8th Cir. 2004). Plaintiff next claims that the arbitration clause is contradictory and ambiguous as to whether punitive damages may be awarded in arbitration because the contract in one section bars the award of punitive damages, and in a different section states that AAA rules must be used in arbitration, which would allow for punitive damages to be imposed. However, the contract also states: "In the event of conflict between the AAA rules and this Agreement, the provisions of this Agreement shall be controlling." This language resolves the contradiction in favor of the bar on punitive damages.

5

### 3. Unconscionable for Selection of Florida as Arbitration Venue

Plaintiff claims the arbitration clause is unconscionable because "Florida has no connection to this case, except it is in defendant's back yard." The Court observes that the arbitration clause allows the parties or the arbitrator to change the location of arbitration or even to conduct it telephonically. Plaintiff does not cite to any authority to support the proposition that a forum selection clause is unconscionable under the FAA where the parties and the arbitrator have the ability to change the location of arbitration or conduct it telephonically, and where both parties had the ability to review the contract, including the forum selection clause, before signing it. The Court does not consider the forum selection clause substantively or procedurally unconscionable.

### 4. Unconscionable for Requiring Plaintiff to Waive Right to Jury Trial

Plaintiff claims the arbitration clause is unconscionable because it forces her to waive her right to a jury trial. The Court observes that binding arbitration clauses, presumptively enforceable under the FAA, necessarily imply the parties' waiver of their right to a jury trial. See *Malan Reality Investors, Inc. v. Harris*, 953 S.W.2d 724, 626 (Mo. 1997) ("In every arbitration agreement, the parties . . . agree to waive a jury trial . . ."). Plaintiff points to no authority establishing that a party cannot waive its right to a jury trial by entering into a contract with an arbitration clause.

### 5. Breach of Contract

Finally, Plaintiff claims the arbitration provision is unenforceable because Defendant breached the "Notice and Good Faith Negotiation" section of the contract, which requires a party intending to file an arbitration demand to notify the other party 30 days before filing and to engage in good faith negotiation during that period.

After careful review, the Court finds that Plaintiff has confused a motion to compel arbitration with a demand for arbitration. A motion to compel arbitration, which asks a court to

authorize an arbitration proceeding, precedes and is distinct from an arbitration demand, which under the AAA Consumer Rules is a written document created by the claimant that informs the respondent it wishes to submit a claim to arbitration. Even if they were one and the same, Defendant's failure to notify and negotiate with Plaintiff prior to filing its motion to compel would not render the clause void. The contract states that "If a party filing an arbitration demand fails to provide that notice, the other Party is entitled to seek a stay of the arbitration proceeding from the AAA for thirty (30) days and to participate in settlement negotiations in good faith." If Defendant fails to provide notice and negotiate in good faith prior to filing its arbitration demand, Plaintiff may seek from the arbitrator a thirty-day stay of the proceedings.

## CONCLUSION

For the reasons explained above, the Court finds the arbitration clause is valid and enforceable. The Court further finds that Plaintiff's claims fall entirely within the scope of the arbitration agreement, and that therefore the entire controversy will be resolved in arbitration. See *Green v. SuperShuttle Int'l Inc.*, 653 F.3d 776, 769-70 (8th Cir. 2011). Consequently, the Court hereby **GRANTS** Defendant's Motion to Dismiss and Compel Arbitration. Plaintiff's petition is **DISMISSED** and parties are **COMPELLED** to submit to arbitration in accordance with the contract documents.

**IT IS SO ORDERED**.


DATED: June 17, 2019

                                    */s/ Douglas Harpool*
                                    **DOUGLAS HARPOOL**
                                    **UNITED STATES DISTRICT JUDGE**

7

Case 6:20-cv-03295-MDH   Document 15   Filed 06/24/20   Page 63 of 68
Case 6:19-cv-03159-MDH   Document 15   Filed 06/24/19   Page 63 of 68



AMERICAN ARBITRATION ASSOCIATION®    INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

1101 Laurel Oak Road
Voorhees, NJ 08043

December 18, 2019

Corporate Creations Network, Inc.
Wyndham Vacation Resorts, Inc.
12747 Olive Boulevard, Suite 300
St. Louis, MO 63141
Via Mail

PLAINTIFF'S EXHIBIT C

**Case Number: 01-19-0004-2096**

Rosetta T. Hutter
-vs-
Wyndham Vacation Resorts, Inc.

Dear Parties:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

Under R-12 of the Consumer Rules, businesses that provide for AAA arbitration in a consumer contract are obligated to submit their current or proposed consumer agreements to the AAA for review and inclusion on the Consumer Clause Registry ("Registry"). The AAA reviews the agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

This business has not previously submitted its consumer arbitration clause for review. As such, the AAA will review the clause for this matter on an expedited basis. The additional fee for this expedited review is $250, payable by the business.

**The business is also directed to submit its current consumer arbitration clause for inclusion on the Registry at** https://www.adr.org/Consumer **at which time the business will also incur a $500 Registry fee. Once the business' clause is registered, it will no longer be assessed the $250 additional expedited review fee on each consumer case filed.**

We note that the arbitration provision has a material or substantial deviation from the Consumer Rules and/or Protocol. Specifically, the provision states:

*The arbitration will be held in the County of Orange, State of Florida…*

*OWNER EXPRESSLY AGREES THAT IN NO EVENT SHALL SELLER, ITS PARENT, SUBSIDIARIES, AFFILIATES, SUCCESSORS, OR ASSIGN BE LIABLE TO OWNER FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE OR ENHANCED DAMAGES ARISING OUT OF, RELATING TO, AND/OR IN CONNNECTION WITH THE MARKETING PROCESS, SALES PROCESS, PURCHASE OF THE OWNERSHIP, USE OF THE OWNERSHIP, AND/OR ANY BREACH OF THIS AGREEMENT. SELLER'S MAXIMUN LIABILITY TO OWNER ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, SHALL BE THE TOTAL AMOUNT PAID TO SELLER UNDER THIS*

*AGREEMENT. OWNER EXPRESSLY WAIVES ANY RIGHT TO SEEK RELIEF IN EXCESS OF THE LIMITATION OF LIABILITY SPECIFIED IN THIS PARAGRAPH.*

The above provision violates Principle 7: Reasonably Convenient Location and Principle 14: Arbitral Remedies. If a party believes that there are additional conflicts with the Protocol and/or Consumer Rules, those issues may be brought before the arbitrator once one has been appointed.

However, so that we may commence administration of this matter, **we are requesting that the business waive the above provision(s) and agree to have this matter and any future consumer arbitrations filed under this agreement administered under the Consumer Rules and in compliance with the Protocol.** Please confirm your agreement to waive the above-quoted provision by signing and dating below and returning a copy of this letter. Absent receipt of the requested waiver, the AAA will decline to administer this dispute and possibly any future consumer arbitrations involving this business. Please note that pursuant to the R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. In addition, Rule R-9 states either party may choose to take the claim to small claims court if the claim is within the jurisdiction of that court.

| | |
|---|---|
| _____ | _____ |
| Business (authorized representative) | Date |

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $300. We have received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, **the business is requested to submit filing fees of $300, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $2,500, totaling $3,050.**

Please make the check payable to the **American Arbitration Association** and include a reference to the case number. Checks should be mailed to **1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.** In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

**The requested payment and waiver should be received no later than January 2, 2020** and the AAA may decline to administer this dispute if the business does not timely respond. It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Thank you for your attention to this matter. If you have any questions please feel free to contact us.

Sincerely,
Consumer Filing
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

cc:    Joseph M. Backer, Esq.
       The Backer Law Firm
       14801 East 42nd Street South
       Suite 100
       Independence, MO 64055
       Via Email to: jbacker@backerlaw.net

AUG 2 5 2020

141



Return
SB 9/11

# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| Judge or Division:<br>JEFFREY M MERRELL | **Case Number: 2046-CC00188** |
|---|---|
| Plaintiff/Petitioner:<br>ROSETTA HUTTER | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH M. BACKER<br>14801 E. 42ND STREET SOUTH<br>SUITE 100<br>INDEPENDANCE, MO 64055   37550 |
|                   vs. | |
| Defendant/Respondent:<br>WYNDAM VACATION RESORTS INC | Court Address:<br>266 MAIN STREET |
| Nature of Suit:<br>CC Other Tort | PO BOX 129<br>FORSYTH, MO 65653        (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **WYNDAM VACATION RESORTS INC**
                  Alias:

**110 WILLOW BEND DRIVE**
**BRANSON, MO 65616**

SERVE RA:    12
COPRORATE CREATIONS NETWORK INC   DEPOS
12747 OLIVE BLVD SUITE 300    VW
ST LOUIS, MO 63141

*COURT SEAL OF*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

           08/12/2020                   /s/ Amy Strahan,tm

*TANEY COUNTY*          Date                       Clerk

         Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____Melissa_____ (name) ____Receptionist____ (title).

☐ other: _____

Served at __12747 Olive # 300__ (address)

in __St Louis__ (County/City of St. Louis), MO, on __8/25/20__ (date) at __0630__ (time).

__Scott V__ 8/26/20
Printed Name of Sheriff or Server                      Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

        Subscribed and sworn to before me on _____ (date).

*(Seal)*

        My commission expires: _____             _____

                                 Date                       Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ ___10.00___ |
| Mileage | $ _____ ( _____ miles @ $._____ per mile) |
| **Total** | $ _____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

20- SMCC - 7574

OSCA (06-18) SM30 (SMCC) For Court Use Only: Document Id # 20-SMCC-7574 1 of 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 6:20-cv-03206-MDH Document 1-1 Filed 09/24/20 Page 67 of 68



*Return*
SB 9/11

# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| Judge or Division:<br>JEFFREY M MERRELL | Case Number: 2046-CC00188 |
|---|---|
| Plaintiff/Petitioner:<br>ROSETTA HUTTER | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH M. BACKER<br>14801 E. 42ND STREET SOUTH<br>SUITE 100<br>INDEPENDANCE, MO 64055  37550 |
| vs. | |
| Defendant/Respondent:<br>WYNDAM VACATION RESORTS INC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO 65653 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **WYNDAM VACATION RESORTS INC**
Alias:

**110 WILLOW BEND DRIVE**
**BRANSON, MO 65616**

**SERVE RA:**
**COPRORATE CREATIONS NETWORK INC**  12 DEPOS
**12747 OLIVE BLVD SUITE 300**  VW
**ST LOUIS, MO 63141**

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**TANEY COUNTY**

| 08/12/2020 | /s/ Amy Strahan,tm |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: Melissa (name) Receptionist (title).
☐ other: _____
Served at 12747 Olive # 300 (address)
in St Louis (County/City of St. Louis), MO, on 8/25/20 (date) at 0630 (time).
Scott Vito 8/26/20
Printed Name of Sheriff or Server                     Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date                                        Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 |
| Mileage | $ _____ ( _____ miles @ $. _____ per mile) |
| **Total** | $ _____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

8/21/20                    20-SMCC-7574

OSCA (06-18) SM30 (SMCC) For Court Use Only: Document Id # 20-SMCC-028                    1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo